[No. E007226. Fourth Dist., Div. Two. July 18, 1991.]

In re ELIZABETH M. et al., Minors.
SAN BERNARDINO COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Petitioner and Respondent, v.
SERVANDO M., Objector and Appellant.

COUNSEL

Valerie L. Nalbantian, under appointment by the Court of Appeal, for Objector and Appellant.

Alan K. Marks, County Counsel, and Sandra D. Baxter, Deputy County Counsel, for Petitioner and Respondent.

William Bud Walls II, Deborah J. Mohr Walker and Janette Freeman Cochran, under appointments by the Court of Appeal, for Minors.

OPINION

**DABNEY, J.**—Servando M., Sr., (Servando, Sr.) appeals from orders entered after a permanency planning hearing under Welfare and Institutions Code section 366.25[1] and a dispositional hearing under section 300. The orders concern his children, Servando, Jr., (born Sept. 9, 1981), Eric (born Aug. 22, 1982), Elizabeth (born Dec. 7, 1983), Daniel (born Oct. 11, 1985), Margaret (born Nov. 14, 1986), and Jonathan (born Feb. 12, 1988). Servando, Sr., contends (1) the court failed to protect the children's due process right to associate with their siblings; (2) the court failed to appoint independent counsel for each child when the children had conflicting interests; and (3) reunification services were inadequate. On appeal, counsel for Servando, Jr., filed a separate brief, contending that the court erred in failing to appoint separate counsel for Servando, Jr., but conceding that the error was not prejudicial. Counsel for Eric and Jonathan joined in the brief of Servando, Sr., as to the issues concerning their right to associate with siblings and their right to separate counsel below. Counsel for Elizabeth, Daniel and Margaret joined in the brief of the San Bernardino County Department of Public Social Services (Department) as to all issues. The children's mother, Diane M., is not a party to the appeal.

FACTUAL AND PROCEDURAL BACKGROUND

Except for challenging the sufficiency of the reunification services, Servando Sr., does not contest the factual bases for the orders. As we conclude below, the sufficiency of the reunification services may not be challenged in this appeal; thus, the background relating to the findings of

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

detriment and to the reunification services provided will not be presented in detail in the statement of facts.

*A. Previous Dependency Proceeding.* In May 1984, Servando, Jr., Eric and Elizabeth were declared dependents of the court under section 300, subdivision (a) after Diane admitted she left the children unattended and Elizabeth, then four months old, reeked of urine and had a serious ear infection requiring medical attention. On the recommendation of a social worker, the dependency was terminated in November 1984.

*B. June 1985 Petition.* In June 1985, the Riverside County Department of Public Social Services filed a petition alleging that Servando, Jr., Eric and Elizabeth came within the provisions of section 300, subdivisions (a) and (d). The petition alleged that Elizabeth had been the victim of physical abuse and sexual abuse, and Servando, Jr., and Eric were in imminent danger of similar neglect and abuse. A medical examination disclosed that Elizabeth had old fractures of the shoulder and wrist and trauma to the ileum, and there was evidence of delay in treatment. The examination also disclosed that Elizabeth had been sexually abused.[2] The petition also alleged neglect, in that Elizabeth was unkempt, underweight and was medically diagnosed as having a nonorganic failure to thrive. The court found the allegations true on July 17, 1985, and the children were placed in the home of their maternal grandmother. The dependency was transferred to San Bernardino County in December 1985.

Servando, Sr., and Diane participated in reunification services, including marital and family counselling, parenting classes, and alcoholics anonymous meetings. Diane was evaluated for mental disability and was found to have an IQ of about 60, which placed her in the mildly mentally retarded range.

In May 1987, after numerous contested hearings, Servando, Jr., Eric and Elizabeth were detained with their parents. The parents were ordered to attend counselling and to enroll the older children in nursery school. Daniel and Margaret, born after the petition was filed, had remained with the parents since their births.

*C. Supplemental Petitions.* In July 1987, supplemental petitions were filed under section 387 as to Servando, Jr., Eric and Elizabeth, and initial

---

[2]The social worker could not conclude who had inflicted the sexual and physical abuse because the children had apparently been left in the care of various men who stayed in the family's one-bedroom apartment from time to time.

petitions were filed under section 300, subdivisions (a) and (d) as to Daniel and Margaret. As later amended, the petitions alleged that Elizabeth had been hospitalized on July 20, 1987, suffering multiple bruises and a hematoma to the head, allegedly caused by a fall from a bunk bed. The petitions also alleged sexual abuse[3] and failure to provide medical care as to Elizabeth, physical abuse as to Margaret, sexual abuse as to Daniel, and antisocial behavior and physical and emotional abuse as to Eric. The children were detained in shelter care and later placed in foster homes.

Following the jurisdictional hearing, the court found that Daniel and Margaret came within section 300, subdivisions (a) and (d), and Servando, Jr., Eric and Elizabeth came within section 387. The court found true the allegations that Elizabeth was the victim of physical abuse and medical neglect and showed physical evidence of sexual molestation within the six months preceding July 24, 1987. The court found that Daniel showed physical evidence of sexual abuse. The court found not true the allegation that Margaret had suffered physical abuse. The court made no findings as to the additional allegations in Eric's petition. The court found that section 361.5, subdivision (b) did not apply, and the children were detained in foster care.

In April 1988, an out-of-custody petition was filed on behalf of Jonathan under section 300, subdivisions (a) and (d). Jonathan was placed under temporary custody of the Department and detained with his parents.

On April 22, 1988, the court ordered Diane to submit to a mental examination to evaluate whether she was mentally disabled; whether, with reunification services, she was likely to be able to care for the children within 12 months; and whether reunification services were likely to prevent continued abuse and neglect. A psychological evaluation of Servando, Sr., was also prepared and filed with the court.

On August 10, 1988, a dispositional hearing for the five oldest children and a combined jurisdictional/dispositional hearing for Jonathan began. The hearing was completed on October 19, 1988, and an order was filed December 19, 1988, declaring Daniel, Margaret and Jonathan dependents of the court and continuing Daniel and Margaret in their current foster placements. The three oldest children were continued as dependents of the court in their current foster placements, and Jonathan was maintained with his parents. The court ordered that a detailed reunification plan be provided to give the

---

[3]Again, the social workers were unable to conclude who had perpetrated the sexual abuse, because Elizabeth had been living with her maternal grandmother within most of the six months during which it could have occurred.

parents an opportunity to participate in, question and be involved with the plan for the return of Daniel and Margaret and that reunification services be developed with respect to Jonathan. The court found that Servando, Jr., Eric and Elizabeth had special needs and required constant, structured care, enlightened treatment and intensive supervision that the parents were not capable of providing. The court ordered that no further reunification services be provided as to the three oldest children. Finally, the court found that the inability to reunite the three oldest children with the family was because of the parents' failure to "recognize, realize and face the reality of the situation," and that a Department approved 24-hour live-in caretaker was a precondition to unsupervised visits, overnight visits or return of the children to the parents.

*D. Findings and Order.* The permanency planning hearing for the five oldest children and the semiannual review for Jonathan were held in August 1989, following which the court entered the orders which are the subject of this appeal. The court found: (1) by clear and convincing evidence, parental custody continued to be detrimental to Servando, Jr., Eric, Elizabeth, Daniel and Margaret, and return to parental custody would create a substantial risk of detriment to their well being; (2) both parents had failed to complete a court-ordered reunification plan; (3) it was not substantially probable that Servando, Jr., Eric, Elizabeth, Daniel or Margaret would be returned to the custody of their parents within six months; (4) it was likely that Servando, Jr., Elizabeth, Daniel and Margaret could or would be adopted; (5) adoption was the most appropriate permanent plan for Elizabeth, Daniel and Margaret; (6) because of his objection to adoption, long-term foster care was the most appropriate permanent plan for Servando, Jr.; (7) it was not likely that Eric could or would be adopted; (8) long-term foster care was the most appropriate permanent plan for Eric; and (9) visitation between the children and the parents would be in the best interests of the children.

The court therefore ordered that (1) Civil Code section 232 actions be initiated as to Elizabeth, Daniel and Margaret; (2) parental visitation be suspended for Margaret, allowed on request for Elizabeth and Daniel and allowed for Servando, Jr., and Eric; (3) Servando, Jr., Eric, Elizabeth, Daniel and Margaret continue as dependent children in the custody of the Department; (4) Jonathan remain in the custody of his parents subject to Department supervision and review; and (5) the matter be continued for semiannual review/permanency planning review.

Other facts are set forth below in the discussion of the issues to which they pertain.

## DISCUSSION

### I

### *Appealability of Orders*

The Department contends that the order which authorized a petition to terminate parental rights was not appealable. (§ 366.25, subd. (j).)[4] Under the plain language of the statute, a challenge to such an order must be brought by a writ. However, the court authorized a petition to terminate parental rights only as to Elizabeth, Daniel and Margaret. Thus, section 366.25, subdivision (j) does not affect the right to challenge the orders insofar as they relate to Servando, Jr., Eric and Jonathan.

*A. Reunification Services.* Servando, Sr., argues that he may challenge contemporaneous orders made during a permanency planning hearing, and an appeal from the adequacy of reunification services as to Elizabeth, Daniel and Margaret therefore is not barred under section 366.25, subdivision (j). A parent may challenge a contemporaneous order if the challenge is not designed to overturn the order authorizing the filing of a petition to terminate parental rights. (§ 395;[5] *In re Kristin W.* (1990) 222 Cal.App.3d 234, 244-249 [271 Cal.Rptr. 629]; *In re Eli F.* (1989) 212 Cal.App.3d 228, 235-236 [260 Cal.Rptr. 453].)

In *Kristin W., supra,* the petitioner challenged both the termination of reunification services and the sufficiency of the reunification plan. The court held that an order terminating reunification services was "not reviewable on appeal under section 366.25, subdivision (j), "because it constituted a direct attack" on the court's order. (*Kristin W., supra,* 222 Cal.App.3d at p. 246.)

Nonetheless, the *Kristin W.* court stated that a challenge to the *sufficiency* of the reunification plan was cognizable on appeal. (*Kristin W., supra,* 222 Cal.App.3d at p. 248.) The court explained, "Although the alleged insufficiency of the reunification efforts which were offered to petitioner contributed to the issuance of the permanency planning order and, thus, arguably, is subsumed in that order, this allegation does not constitute a direct attack on the authorization order. Therefore, the issue concerning the insufficiency of

---

[4]An order that authorizes the filing of a petition to terminate parental rights under Civil Code section 232 is not an appealable order but the subject of review by extraordinary writ. (§ 366.25, subdivision (j).)

[5]Section 395 allows an appeal to be taken from a judgment in a section 300 proceeding "in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; . . ."

the reunification services before the permanency planning decision was made is cognizable on appeal. [Citation.]" (*Ibid.*)[6]

We disagree with the statement in *Kristin W.* that section 366.25, subdivision (j) does not preclude a challenge on appeal to the adequacy of reunification services. The remedy Servando, Sr., seeks is reversal of the authorization order. A challenge directed toward overturning such an order falls squarely within section 366.25, subdivision (j). (*Eli F., supra,* 212 Cal.App.3d at p. 236.) We conclude that Servando Sr., may not raise the issue of the adequacy of the reunification services as to Elizabeth, Daniel and Margaret in this appeal.

*B. Timeliness of Challenge.* ■ The Department next argues that the challenge to reunification services provided as to Servando, Jr., and Eric is untimely. On December 19, 1988, the court ordered termination of reunification services as to Servando, Jr., and Eric. Servando, Sr., did not appeal from that order, although it was appealable. An order adjudicating a minor a dependent child under section 300 is appealable as a final judgment, and any subsequent order may be appealed from as from an order after judgment. (*In re Timothy N.* (1975) 48 Cal.App.3d 862, 867 [121 Cal.Rptr. 880].) An appeal from the most recent order entered in a dependency matter may not challenge prior orders, for which the statutory time for filing an appeal has passed. (*In re Elizabeth G.* (1988) 205 Cal.App.3d 1327, 1331 [253 Cal.Rptr. 161].) Thus, the appeal as it relates to reunification services for Servando, Jr., and Eric is untimely. Servando, Sr., may not challenge the adequacy of reunification services in this appeal.

*C. Independent Counsel for Children.* ■ Servando, Sr., next contends that the court should have appointed independent counsel for each child, because the children's interests in the outcome of the proceeding differed. This challenge is also directed to the validity of the order authorizing petitions for termination of parental rights. Thus, the issue may not be raised as to Elizabeth, Daniel and Margaret. (§ 366.25, subd. (j); *Eli F., supra,* 212 Cal.App.3d at p. 236.) The issue is appealable as to the other children.

■ The Department asserts that Servando, Sr., failed to raise the issue of independent counsel for the children at any prior hearing, and the issue is therefore waived. In the criminal law context, the California Supreme Court has held that no objection is required to raise the issue of attorney conflict of interest on appeal. (*People v. Bonin* (1989) 47 Cal.3d 808, 839 [254

---

[6]Despite finding the issue was appealable, the court determined that in the interest of providing speedy and effective relief in juvenile court matters, it would decide the issue in the writ proceeding which was also pending before the court. (*Kristin W., supra,* 222 Cal.App.3d at pp. 248-249.)

Cal.Rptr. 298, 765 P.2d 460].) The court explained, "To our mind, so long as the trial court knew, or reasonably should have known, of the possibility of a conflict of interest, it is immaterial whether or not the defendant made an objection." (*Ibid.*)

Here, the issue was raised on appeal not only by Servando, Sr., but also by Servando, Jr., Eric and Jonathan. If the counsel they shared with their other siblings in juvenile court had a conflict of interest, they should not be deemed to have waived the issue. (Cf. *Bonin, supra,* 47 Cal.3d at pp. 840-841.) We conclude that the issue is cognizable on appeal as to Servando, Jr., Eric and Jonathan.

*D. Sibling Visitation.* ■ Servando, Sr., Eric and Jonathan contend that the court violated the children's due process rights by failing to order sibling visitation. In considering a similar issue regarding parental visitation, the court in *Kristin W., supra,* 222 Cal.App.3d at page 248 stated, "A decision whether to grant visitation rights to a parent is independent of any decision authorizing the termination of parental rights. Visitation may be granted or continued to a parent during the time it takes to determine whether parental rights should be terminated. [Citation.] Because the granting of parental visitation rights is not inconsistent with a permanency planning order authorizing termination of parental rights, a visitation order is not within the parameters of section 366.25, subdivision (j) and thus is appealable under section 395." (*Id.,* at p. 248; see also *In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849, 858-859 [146 Cal.Rptr. 26].)

By parity of reasoning, we conclude that orders concerning sibling visitation are likewise appealable under section 395. Sibling visitation, just like parent visitation, is not inconsistent with an order authorizing a petition to terminate parental rights and thus does not come within section 366.25, subdivision (j).

The Department contends, however, that Servando, Sr., failed to raise the issue of sibling visitation below and thus has waived the right to appeal. Our review of the record indicates that counsel for Servando, Sr., raised the issue of sibling visitation at the hearing on August 17, 1989, although he did not specifically request an order on the matter separate from parental visitation.[7] We conclude that the issue is appealable.

---

[7]Counsel stated, "I know it's difficult and it's an unusually difficult situation mechanically speaking for the department to get five kids together, get a social worker together, get the parent together, get hopefully young Jonathan together, that they can all be some place to have contact with each other, but I think all the kids benefit from it, whatever happens."

## II

### Independent Counsel

*A. Standard of Review.* Servando, Sr., joined by Eric and Jonathan, and Servando, Jr., contend that the court should have appointed independent counsel for each child under former section 318, now section 317[8] because the children had divergent interests in the outcome of the proceedings. Servando, Jr., concedes that the error was harmless. ██ A father has standing to assert his child's right to independent counsel, because independent representation of the children's interests impacts upon the father's interest in the parent-child relationship. (*In re Patricia E.* (1985) 174 Cal.App.3d 1, 6 [219 Cal.Rptr. 783]; *In re David C.* (1984) 152 Cal.App.3d 1189, 1206 [200 Cal.Rptr. 115].)

The children were all represented in juvenile court by Deputy District Attorney Janet Ward, who also initially prosecuted the petition under section 300 and later moved to amend the petition. In April 1988 a deputy county counsel appeared for the Department and represented the Department throughout the rest of the proceedings.

A potential conflict of interest among the children appears in the record. For example, during the proceedings on the section 387 petition, Servando,

---

[8]During the pendency of these proceedings, the statutes governing appointment of counsel for minors changed. Former section 318, repealed by Statutes 1987, chapter 1485, section 54, operative January 1, 1989, provided, "(a) . . . [W]hen a minor who is alleged to be a person described in subdivision (d) of Section 300 appears before the juvenile court at a detention hearing, the court *shall* appoint counsel. The court may appoint the district attorney to represent the minor pursuant to Section 351.

" . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) The counsel shall be charged in general with the representation of the child's interests. To that end, he shall make such further investigations as he deems necessary to ascertain the facts, including the interviewing of witnesses, and he shall examine and cross-examine witnesses in both the adjudicatory and dispositional hearings; . . ." (Italics added.)

Section 317, now provides, "(c) *In any case in which it appears to the court that the minor would benefit from the appointment of counsel* the court shall appoint counsel for the minor. Counsel for the minor may be a county counsel, district attorney, public defender, or other member of the bar, provided that the counsel does not represent another party or county agency whose interests conflict with the minor's. . . .

" . . . . . . . . . . . . . . . . . . . . . . . . . ."

"(e) The counsel for the minor shall be charged in general with the representation of the minor's interests. To that end, counsel shall make such further investigations as he or she deems necessary to ascertain the facts, including the interviewing of witnesses, and he or she shall examine and cross-examine witnesses in both the adjudicatory and dispositional hearings; he or she may also introduce and examine his or her own witnesses, make recommendations to the court concerning the minor's welfare, and participate further in the proceedings to the degree necessary to adequately represent the minor. In any case in which the minor is four years of age or older, counsel shall interview the minor to determine the minor's wishes and to asses the minor's well-being. . . ." (Italics added.)

Jr., wanted to return to his parents. Eric also wanted to maintain his relationships with his parents and his siblings. He had been placed in a group home where he had been unable to find any adult with whom he had formed a bond. Even though he showed physical evidence of sexual abuse, Daniel had a strong attachment to his father. Margaret, on the other hand, was taken from her parents at a young age and had bonded well with her foster parents. Elizabeth, who had been the victim of actual physical abuse and sexual abuse, also had had a positive adjustment to her foster home. Servando, Sr., argues that the interests of Servando, Jr., Eric and Jonathan would best have been served by counsel advocating reunification services and termination of the dependency proceedings. In contrast, counsel for Elizabeth, Daniel and Margaret may well have advocated against their being reunited with their parents. At the hearing on October 19, 1988, the children's counsel opposed the return of Servando, Jr., and Eric and argued for no reunification services for them.

Neither statute nor case law addresses whether independent counsel is required in dependency proceedings when different children of the same family have conflicting interests. Servando, Sr., argues that we should apply the standard of prejudice which governs criminal proceedings when joint counsel is subject to potential conflict. ■ In criminal cases, reversal may be required "if the record supports 'an informed speculation' that appellant's right to effective representation was prejudicially affected." (*People v. Mroczko* (1983) 35 Cal.3d 86, 105 [197 Cal.Rptr. 52, 672 P.2d 835].)

In reviewing another dependency proceeding under section 300 et seq., the court in *Patricia E.*, *supra*, 174 Cal.App.3d 1 stated, "Here, although the proceeding is not a criminal proceeding, the *Mroczko* standard of review is applicable. The minor has a statutory right to appointment of counsel. That right necessarily entails a right to effective assistance of counsel appointed. Counsel subject to a conflict may be rendered less effective in a myriad of subtle ways. This is particularly the case when counsel is assigned the responsibility of choosing the very outcome for which to advocate on behalf of the minor." (*Id.*, at p. 9.)

We disagree with the holding in the *Patricia E.* court that the *Mroczko* standard governs in a dependency proceeding. A defendant's right to counsel in criminal proceedings is a constitutional right. (U.S. Const., 6th & 14th Amends.; Cal.Const., art. I, § 15.) "[T]his right is fundamental, being among those constitutional rights which are so basic to a fair trial that their infraction can never be treated as harmless error. [Citations.]" (*People v. Singer* (1990) 226 Cal.App.3d 23, 37 [275 Cal.Rptr. 911].) Thus, under the California Constitution, even a potential conflict may require reversal; proof of an "actual conflict" is not required. (*Id.*, at p. 39.) ■ In contrast, a

minor's right to counsel in dependency proceedings derives solely from statute. (§ 317, former § 318.)

In *In re Richard E.* (1985) 21 Cal.3d 349 [146 Cal.Rptr. 604, 579 P.2d 495], a father appealed from the juvenile court's failure to appoint counsel for the minor in a proceeding to free the minor from his parents' custody under Civil Code section 232. The Supreme Court first ruled that the juvenile court abused its discretion by failing to appoint counsel for the minor when the record contained no showing on the issue of need.[9] (21 Cal.3d at pp. 354-355.) The court then considered the consequences of the error. The court stated, "Failure to appoint counsel in the context of a freedom from parental custody and control proceeding is dissimilar to denial of the fundamental right to counsel where one is charged with crime or juvenile misconduct. [Citation.] None of the personal deprivations flowing from denial of counsel in juvenile court proceedings are present here. [Citations.] Accordingly, failure to appoint counsel for a minor in a freedom from parental custody and control proceeding does not require reversal of the judgment in the absence of miscarriage of justice. [Citation.]" (*Id.*, at p. 355.)[10] The court analyzed the record and found "nothing which independent counsel for the minor might have done to better protect [minor's] interests. The court made its judgment with full knowledge of family relationships affecting [the father and minor], noting particularly the very favorable manner in which [the father's] other children had developed notwithstanding his long absence from the family. It thus appears the court had before it all factual matters which may have persuaded it that [the minor's] interests would be best served by not depriving [the father] of custody." (*Id.*, at pp. 355-356, fn. omitted.)

In other dependency cases, courts have applied a harmless error standard when a trial court has deprived a parent of the statutory right to counsel. (*In re Nalani C.* (1988) 199 Cal.App.3d 1017, 1028 [245 Cal.Rptr. 264]; *In re Justin L.* (1987) 188 Cal.App.3d 1068, 1077-1078 [233 Cal.Rptr. 632]; but see *In re James S.* (1991) 227 Cal.App.3d 930, 936 [278 Cal.Rptr. 295].)[11]

---

[9]Civil Code section 237.5, the statute under consideration in *Richard E.*, was amended in 1981. Section 237.5 "now expressly requires courts to consider the need for counsel; if there is a need, the court must appoint independent counsel to represent the child." (*In re Mario C.* (1990) 226 Cal.App.3d 599, 606 [276 Cal.Rptr. 548].) "[T]he *Richard E.* prejudice test should also be applied to violations of the present statute." (*Mario C., supra*, at p. 606.)

[10]The *Richard E.* court expressly disapproved a suggestion in an earlier case, *In re Dunlap* (1976) 62 Cal.App.3d 428 [133 Cal.Rptr. 310], that a court's failure to exercise its discretion to appoint counsel for a minor in a Civil Code section 232 proceeding results in automatic reversal. (*Richard E., supra*, 21 Cal.3d at p. 356, fn. 5.)

[11]On April 25, 1991, the California Supreme Court granted review in *In re Christine P.* (Cal.App.); review dismissed December 19, 1991, and cause remanded to Court of Appeal, Sixth Appellate District. In *Christine P.* the appellate court applied a harmless error standard to the denial of a parent's right to counsel in a dependency proceeding.

We conclude that the *Richard E.* standard applies to evaluating error in failing to appoint independent counsel for children with varying interests. We thus determine whether the record reflects a miscarriage of justice in the failure to appoint separate counsel.[12]

*B. Permanent Plan for Servando, Jr., and Eric.* Servando, Jr., and Eric were both diagnosed in 1988 as suffering from attention deficit disorders. After Eric was removed from his parents' home in July 1987, he exhibited antisocial behavior, in the form of setting fires at his foster home. He was then placed in a group home where he received psychotherapeutic services. The psychologist who evaluated the children recommended that Servando, Jr., be put up for adoption because of the difficulty of managing his behavior problem. She also recommended against returning Eric to his parents' home because of his significant behavior problems.

A psychologist who evaluated Diane in 1988 concluded that her mental retardation would allow her only limited insight into her children's behavior. The report indicated that Diane would be likely to act impulsively without regard to consequences, and might downplay the children's antisocial behavior. A second psychologist who evaluated Diane likewise concluded that Diane was "markedly deficient in parenting capacities, skills and stress tolerance." He recommended that she would need daily supervision by a competent adult to provide an adequate environment for her children.

A therapist who evaluated Servando, Sr., in 1988 concluded that he was a sincere and caring father, but that he saw only the good in others and refused to believe that his friends might have molested Elizabeth. The report stated, "Because of the severity of the denial mechanism [Servando, Sr.] would not be able to either identify nor recognize any problematic children's behavior that arises in the course of living nor would he be able to protect his children from the abuse of others."

██ The juvenile court considered all of these reports before entering the orders which are the basis of this appeal. The court stated that it assumed that Servando, Jr., and Eric wished to return to their parents' home; nonetheless, the court adopted the recommendations of the social worker and various psychologists that the children not be returned to their parents. Jonathan was never removed from his parents' home, and according to all

---

[12]Servando, Sr., raises an issue concerning the children's rights to visit one another. Although the issue is framed in terms of a due process right, we consider it in connection with the claim that the children should have had independent counsel. We thus need not reach the constitutional question presented.

reports, appeared to be thriving in their care. Thus, we discern no possible prejudice to Jonathan in the court's failure to appoint separate counsel for him. Servando, Sr., has not suggested any factual matters which independent counsel could have presented. (*Richard E., supra*, 21 Cal.3d at p. 356.) Thus, even if the court did err in failing to appoint independent counsel, we find no miscarriage of justice.

*C. Right to Associate With Siblings.* Servando, Sr., argues that the court violated the rights of his children by failing to order sibling visitation.[13] The Department contends that the informal visitation which was taking place among the children was sufficient.

 The standard which governs all determinations in dependency proceedings is to protect the welfare and best interests of the child. (*In re Malinda S.* (1990) 51 Cal.3d 368, 384 [272 Cal.Rptr. 787, 795 P.2d 1244]; *In re Angelia P.* (1981) 28 Cal.3d 908, 916 [171 Cal.Rptr. 637, 623 P.2d 198].) However, no statute addresses sibling visitation, and we have found no California case on the issue.

In *In re Jennifer G.* (1990) 221 Cal.App.3d 752 [270 Cal.Rptr. 326], the court, addressing the right of parental visitation in a section 300 proceeding, stated, "The definition of such a right necessarily involves a balancing of the interests of the parent in visitation with the best interests of the child. In balancing these interests, the court in the exercise of its judicial discretion should determine whether there should be any right to visitation and, if so, the frequency and length of visitation." (*Id.*, at p. 757.)

We conclude that the statutory scheme which requires the court to consider the best interests of the child in dependency proceedings includes an implicit requirement that the court consider whether continuing sibling visitation is in the child's best interests. However, just as the court can constitutionally terminate parental visitation in the best interests of a child, the court can also determine not to continue sibling visitation, based on a finding of the child's best interests.

 We cannot presume error from the fact that the court failed to order sibling visitation. Rather, we must indulge every presumption and intend-

[13]Servando, Sr., suggests that the court should have ordered that future adoption of Elizabeth, Daniel and Margaret be conditioned on their right to continuing sibling visitation. Inour view, such an order would be premature, and moreover, in excess of the court's jurisdiction at a permanency planning hearing. The court which rules on the petition authorizing freedom from parental custody and control must independently determine the best interests of the children. (Civ. Code, § 232.5.) Thus, at most, the court at a permanency planning hearing could order that sibling visitation continue until such time as a petition under Civil Code section 232 is heard.

ment in support of the correctness of the judgment. (*Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706, 712 [152 Cal.Rptr. 65].) Applying this standard, we would be required to presume that the trial court impliedly found that an order for continuing sibling visitation was not in the best interests of the children. However, the record contains no evidence that would support such a finding. Instead, the record shows that the children have enjoyed and benefitted from informal visitation.[14] The Department notes that at the permanency planning hearing on August 17, 1989, the social worker testified that in her opinion, visitation should continue because it was in the best interests of the children.

We cannot conclude, as does the Department, that because informal visitation had taken place in the past, no order for continuing visitation was required. The court in *Jennifer G.*, *supra*, held that the power to regulate visitation rests in the court, and the court may not delegate this function to the department of social services. (*Jennifer G.*, *supra*, 221 Cal.App.3d at p. 757.)

Applying the standard of review set forth in *Richard E.*, *supra*, 21 Cal.3d 349, we cannot find that the failure to appoint independent counsel was harmless with respect to the sibling visitation issue. In light of the strong record supporting continuing visitation, independent counsel for Servando, Jr., and Eric may well have advocated such visitation, whereas counsel for Margaret may have concluded that it would interfere with her adjustment to a prospective adoption home. We conclude that the error was not harmless, and the matter should be returned to the juvenile court for a determination of sibling visitation.

---

[14]At the time of the permanency planning hearing, Jonathan was detained with his parents, and Eric had been in a group care home for emotionally disturbed children in San Bernardino for about a year. Elizabeth and Margaret were placed in the same foster home in Crestline, and their foster parents were willing to adopt both girls. Daniel and Servando, Jr., had been together in another foster home in Crestline for about a month, but the social worker recommended that Daniel be moved, because the foster parents had reservations about adopting him. With the exception of Eric, the other four older children saw each other weekly, because they attended the same church. They saw Jonathan only when they visited in the park about once every other month. Elizabeth and Margaret's foster parents had invited Servando Jr., to visit twice, but the girls no longer asked to see him. The social worker stated, "The boys are closer. And then the two girls are close."

The social worker stated that Servando, Jr., and Daniel enjoyed being together. Eric wanted to have continuing contact with Servando, Jr. Servando, Jr., had asked not to be reunited with his parents as long as he had contact with Eric and Daniel, his favorite siblings. The social worker stated that the five older siblings were aware that they were part of a sibling group, with the possible exception of three-and-a-half-year-old Margaret, who knew only that Elizabeth was her sister.

The social worker testified that ". . . there's always going to be a problem when children are split if they're used to being together."

## DISPOSITION

The orders appealed from are affirmed; however, the matter is returned to the juvenile court for a determination whether sibling visitation should be allowed in the best interests of the children, and if so, the frequency and length of visitation.

Ramirez, P. J., and McDaniel, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.