[Nos. E014958, E015967. Fourth Dist., Div. Two. Jan. 30, 1996.]

In re NATASHA A., a Person Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Plaintiff and Respondent, v.
WAYNE A., Defendant and Appellant.

COUNSEL

Meyer I. Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

William C. Katzenstein, County Counsel, and Tanya Galvan, Deputy County Counsel, for Plaintiff and Respondent.

Frederick I. Marr, under appointment by the Court of Appeal, for Minor.

OPINION

RICHLI, J.—In this juvenile dependency case, the juvenile court found that Wayne A. had sexually molested his daughter, Natasha A.; it denied Wayne any visitation. In a previous appeal by Wayne, we affirmed the denial of visitation.

While Wayne's first appeal was pending, however, he made a request for supervised visitation, which the juvenile court denied. Later, the juvenile court declined to hold review hearings while the appeal was pending, and took the case off calendar instead. In this appeal, Wayne challenges both these actions.

We hold that the juvenile court properly denied Wayne's request for supervised visitation, because Wayne made the request orally and not by way of a petition showing changed circumstances under Welfare and Institutions Code section 388,[1] and because even Wayne's oral request failed to show any relevant changed circumstances; but we also hold that the juvenile court erred by refusing to conduct review hearings while the first appeal was pending.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 1992, the Riverside County Department of Public Social Services (DPSS) filed a juvenile court petition alleging that Natasha A. (born Feb. 27, 1988), as a result of having been sexually abused by her father, Wayne A., came within section 300, subdivision (d).

On February 11, 1993, following a contested jurisdictional hearing, the juvenile court found that Wayne had sexually abused Natasha. It adjudged her a dependent child of the court, and "eliminated" visitation by Wayne.

---

[1]All further statutory citations are to the Welfare and Institutions Code, unless otherwise specified.

At an uncontested dispositional hearing on March 22, 1993, the juvenile court placed Natasha in the legal custody of DPSS, and in the physical custody of her mother, Starla H. The court adopted DPSS's proposed reunification and family services plan. The plan required Wayne to participate in a sexual abuse program offered by Parents United, and to participate in individual treatment to address any issues that prevented him from making progress in the Parents United program. The plan set the following objectives for Wayne: "[d]emonstrate that you have overcome denial of your actions," "[d]emonstrate that you accept responsibility for your actions," and "[d]emonstrate that you understand the dynamics that led you to become involved in sexually abusing your child." The plan also provided that: "Visits [between Wayne and Natasha] shall not take place until the minor's therapist feels that it is in the best interest of the minor and the minor is willing to have visits."

On May 18, 1993, Wayne filed a notice of appeal from the orders entered at the dispositional hearing (*In re Natasha A.*, case No. E012488).

On August 3, 1993, the social worker reported that she had had no contact with Wayne, and had received no proof that he was receiving treatment as required. She recommended that the dependency be terminated. However, in a supplemental report on August 19, 1993, she changed her recommendation, explaining: "Since this case is being appealed [d]ependency of the minor can not be terminated at this time."

By January 25, 1994, the social worker still had had no direct contact with Wayne. However, she reported that Wayne had enrolled in Parents United on July 29, 1993. He had attended a second session (a social event) on August 5 and a third on September 9, then stopped attending. She concluded that he had made "no progress . . . towards resolution of his problem." Nevertheless, she stated: "There . . . continues to be a need for Court supervision of Natasha A[.] until the Appeal E 012488 filed by the father, Wayne A[.], is determine[d]."

On February 22, 1994, at the 12-month review hearing, Wayne submitted a letter from a therapist stating that he had begun attending individual therapy sessions on September 15, 1993, and as of the date of the letter, which was October 12, 1993, he had not missed any. At the end of the hearing, the juvenile court continued its previous orders in effect.

On July 8, 1994, the social worker reported that she still had had no contact with Wayne, and had received no confirmation that he was receiving treatment. However, she stated: "The appeal filed by Mr. A[.] has not been settled as yet. For this reason the case will continue in Family Maintenance."

At the 18-month review hearing on July 27, 1994, Wayne requested supervised visitation with Natasha. He submitted a letter from his therapist

stating that he had been in individual therapy since September 15, 1993, although he had taken a "leave" from December 12, 1993, through May 5, 1994. She stated: "Mr. A[.] does not appear to fit the profile of a pedophile. . . . I have no evidence which indicates that Mr. A[.] presents a danger to his child." Wayne also asked to be relieved of the requirement that he attend Parents United. His counsel argued: "[D]ue to the fact that he will not admit that he molested his child, that was just futile. . . . [¶] [T]hey will not assist him unless he admits culpability. He's not willing to do so." The juvenile court denied both of Wayne's requests , and continued its previous orders in effect.

On August 29, 1994, Wayne filed a notice of appeal from this order (case No. E014958).

A further review hearing was noticed for January 18, 1995. However, DPSS failed to file a report prior to the hearing. (See § 364, subd. (b).) At the hearing, for this reason, Wayne asked for a 30-day continuance. DPSS and Starla asked the court to suspend *all* review hearings while the appeal in case No. E012488 was pending. Over Wayne's objection , the juvenile court ordered the case off calendar pending the resolution of his appeal. Meanwhile, it continued its previous orders in effect.

On March 17, 1995, Wayne filed a notice of appeal from this order (case No. E015967). On April 5, 1995, we ordered cases No. E014958 and E015967 consolidated.

On May 10, 1995, we issued our opinion in No. E012488 (nonpub. opn.). We affirmed the juvenile court's original denial of visitation; we held that the provision regarding future visitation simply meant that "Natasha should not be forced to visit with Wayne against her will," and that both Natasha and her therapist could have input on visitation issues. We observed that Wayne could file a petition to modify the visitation order pursuant to section 388.

II.

THE DENIAL OF WAYNE'S REQUEST FOR SUPERVISED VISITATION

In case No. E014958, Wayne contends that the juvenile court erred at the 18-month review hearing by denying his request for supervised visitation.

Preliminarily, DPSS contends that orders granting or denying visitation are not appealable. This contention is simply frivolous. We have repeatedly held that the order entered at the dispositional hearing is a final

judgment, and that an order entered after the dispositional hearing is appealable as an order after judgment. (*In re Cicely L.* (1994) 28 Cal.App.4th 1697, 1704 [34 Cal.Rptr.2d 345]; *In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 563 [283 Cal.Rptr. 483]; see also § 395.)

DPSS relies on *In re Steven H.* (1992) 6 Cal.App.4th 1752 [8 Cal.Rptr.2d 535], in which the court refused to hear an appeal from the visitation provisions of an order setting a section 366.26 hearing. (*In re Steven H., supra,* 6 Cal.App.4th at pp. 1757-1761.) *Steven H.* is inapplicable, for two reasons. First, the decision was expressly premised on former section 366.26, subdivision (k) (see now § 366.26, subd. (*l*)), which provided that an order setting a section 366.26 hearing was not appealable. (*In re Steven H., supra,* 6 Cal.App.4th at p. 1759.) Thus, *Steven H.* applies only to visitation orders made in the course of setting a section 366.26 hearing. Second, the *Steven H.* court expressly disagreed with other courts—including this one— which have held that a visitation order *is* separately appealable *even if* made in the course of setting a section 366.26 hearing. (*In re Steven H., supra,* 6 Cal.App.4th at pp. 1757-1758, citing, inter alia, *In re Elizabeth M., supra,* 232 Cal.App.3d 553, 562.) The juvenile court's denial of visitation at the 18-month review hearing is manifestly appealable.

■ On the merits, although Wayne purports to concede for purposes of this appeal that the original order denying him any visitation was valid, implicitly he challenges that order by arguing that the juvenile court was statutorily required to allow him visitation. He relies on section 362.1, which provides that an "order placing a minor in foster care, and ordering reunification services, shall provide . . . [¶] [f]or visitation between the parent . . . and the minor. Visitation shall be as frequent as possible, consistent with the well-being of the minor." This section, however, is obviously irrelevant, because Natasha was never placed in foster care. In any event, as Wayne never objected to the original order, announcing instead that he was not contesting the dispositional hearing, and as that order has since been affirmed on appeal, we believe its validity is no longer open to question. (See *People* v. *Senior* (1995) 33 Cal.App.4th 531, 534-538 [41 Cal.Rptr.2d 1].)

DPSS contends that the only way Wayne could obtain a change in visitation was by filing a petition under section 388.[2] We agree.

The juvenile court is forbidden to change, modify, or set aside its previous orders without advance notice to the minor and to DPSS. (§ 386.) If the

[2]Section 388 provides, in pertinent part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . . The petition shall be verified . . . and shall set forth in concise language any change

minor has been removed from his or her parent's physical custody, the juvenile court must hold periodic review hearings pursuant to section 366.21. At such hearings, the court has the statutory power to order that reunification services, including visitation, be offered, modified, continued, or, under narrowly limited circumstances, terminated. (§ 366.21, subds. (e), (f), (g)(1), (g)(3), (h).) Arguably these statutory provisions constitute sufficient notice that the juvenile court may modify its previous orders at a section 366.21 review hearing.

If, as here,[3] the minor is not removed from his or her parent's physical custody, the juvenile court still must hold periodic review hearings; however, those hearings are governed by section 364. Under section 364, the only issue before the court is "whether continued supervision is necessary." Absent a section 388 petition (or some other form of prior notice), it cannot modify its previous orders at a section 364 review hearing.

This conclusion is supported by *In re Elaine E.* (1990) 221 Cal.App.3d 809 [270 Cal.Rptr. 489]. There, four minors were declared dependents after their father sexually molested one of them. They were placed in their mother's physical custody; eventually, their father was allowed supervised visitation with them. (*Id.*, at p. 812.) At a subsequent review hearing, the probation officer recommended that the father be allowed unsupervised visitation; the juvenile court, however, was inclined to dismiss the case instead. The father asked for an opportunity to present evidence on the visitation issue. The juvenile court refused to hear such evidence, denied unsupervised visitation because the father had failed to show changed circumstances, and dismissed the case. (*Id.*, at pp. 812-813.)

The appellate court held: "[A]ppellant was not entitled to present evidence on the issue of visitation either at a review hearing, a termination hearing, or

of circumstance or new evidence which are [*sic*] alleged to require such change of order . . . .

"If it appears that the best interests of the child may be promoted by the proposed change of order . . . , the court shall order that a hearing be held and shall give prior notice, or cause prior notice to be given, to such persons and by such means as prescribed by Section 386 . . . ."

[3]Wayne contends that section 366.21 applied, rather than section 364, because the juvenile court had placed Natasha in DPSS's custody. At the dispositional hearing, the juvenile court did order Natasha "removed from the care and custody" of both Wayne and Starla and placed in the "custody/control" of DPSS; at the same time and in the same order, however, it also "continued" her placement in Starla's home. Thus, Natasha was only removed from Wayne and Starla's *legal* custody; indeed, it would seem this followed tautologically from her being adjudged a dependent child of the court. She was never removed from Starla's *physical* custody. She likewise was never removed from Wayne's physical custody, because he did not have physical custody to begin with.

any other hearing unless he first showed changed circumstances pursuant to section 388 . . . ." (221 Cal.App.3d at p. 814.) "Section 364 hearings focus on whether continued supervision is necessary while section 388 hearings focus on whether an existing order should be modified. Where, as here, the noncustodial parent seeks modification of an existing order, he must comply with the specific requirements of section 388. These requirements may not be avoided by making the motion in a section 364 hearing." (*Id.*, at p. 815; see also *In re Nina P.* (1994) 26 Cal.App.4th 615, 622 [31 Cal.Rptr.2d 687] [party seeking modification of permanent plan must file section 388 petition].)

As Wayne points out, *In re Roger S.* (1992) 4 Cal.App.4th 25 [5 Cal.Rptr.2d 208] disagreed with *Elaine E.* In *Roger S.* (as in *Elaine E.*), the juvenile court refused to take evidence on visitation at a section 364 hearing, and dismissed the case. The *Roger S.* court held that this was error. It reasoned that when the juvenile court dismisses a case, under section 362.4 it can also make a "termination" or "exit" order determining custody and/or visitation. "[W]hen making [a termination] order . . . , the juvenile court has the power to hear evidence relevant to that order under section 362.4, which the *Elaine E.* court did not discuss. . . . As section 362.4 gives the juvenile court power to fashion termination orders, it makes no sense to interpret section 364 to preclude the court from considering evidence relevant to that task. To the extent *Elaine E.* implies that a trial court cannot receive evidence concerning visitation under section 362.4, we decline to follow it." (4 Cal.App.4th at p. 30.)

*Roger S.*, then, did *not* take issue with the holding or reasoning of *Elaine E.* when applied to a section 364 hearing at which the juvenile court is *not* considering issuing a termination order under section 362.4. We conclude that before the court can modify or set aside any of its previous orders at such a hearing, prior notice must be given. A petition under section 388 provides for such notice; Wayne's oral request did not. On the facts of this case, we need not decide when or whether some other form of prior notice would be acceptable.

In the alternative, however, assuming for purposes of argument that Wayne's oral request for supervised visitation was effective, the juvenile court's denial of the request was still proper because Wayne failed to show sufficient changed circumstances. The juvenile court originally denied visitation because it found it "very clear . . . , certainly beyond the standard of a preponderance of the evidence,[4] that the child . . . has been sexually abused and I believe there is a substantial risk that she will be sexually abused were she to have visitation with [Wayne]."

---

[4]At the subsequent dispositional hearing, the juvenile court, without hearing any further evidence, found "by clear and convincing evidence" that Wayne had sexually abused Natasha.

In support of his request for supervised visitation, Wayne submitted a letter from his therapist. She stated:

"Mr. A[.] initiated therapy on September 15, 1993 . . . . [¶] I have seen Wayne a total of sixteen one-hour sessions. Mr. A[.] took a leave from therapy on December 12, 1993 and returned to therapy on May 5, 1994.

"Mr. A[.] had also been court-ordered to attend the Parents United group for perpetrators of sexual abuse. Mr. A[.] chose not to attend these because he found them to be very offensive. Mr. A[.] has stated repeatedly and emphatically that he is not a child molester, and says he did not molest Natasha.

"Mr. A[.] does not appear to fit the profile of a pedophile. . . . I have no evidence which indicates that Mr. A[.] presents a danger to his child."

The therapist claimed to have no evidence that Wayne would molest Natasha, but she likewise offered no substantial evidence that he would *not*. Her lukewarm observation that he did not "appear" to fit the profile of a child molester was insufficient to overcome the "very clear" evidence—the sufficiency of which Wayne has never challenged—that he had in fact molested his daughter repeatedly. Moreover, the letter showed that Wayne had done nothing to come to terms with the issue. He had not gone to Parents United; he had not gone regularly or consistently to his own therapist; and he persisted in refusing to admit the molestations.

As we held in the first appeal, the juvenile court was not necessarily bound by the provision that Wayne could not have visitation until Natasha was willing and her therapist determined that it would be in her best interests. Moreover, it was not necessarily bound to deny Wayne visitation simply because he had molested Natasha, or even because he denied doing so. Nevertheless, it was significant that there was no evidence that any of these circumstances had changed, and no other new evidence that visitation would be in Natasha's best interests. We need not decide precisely what hypothetical showing might have justified an order permitting visitation. It suffices to note that Wayne failed to offer any evidence whatsoever of any relevant change of circumstances.

Wayne claims the juvenile court denied his visitation request only because the appeal was pending , but this mischaracterizes the court's ruling. It did ask, "Isn't it the fact that everything's on hold until [the appeal is] resolved?" However, as we read the record, it went on to deny Wayne's request because (1) the original order denying visitation had not been

overturned on appeal, and (2) there was no showing of changed circumstances.[5] In any event, we review the lower court's ruling, not its reasoning; we may affirm that ruling if it was correct on any ground. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]; *Bro* v. *Glaser* (1994) 22 Cal.App.4th 1398, 1405 [27 Cal.Rptr.2d 894].) We conclude that the juvenile court did not err in denying Wayne's request for supervised visitation.

III.

### THE SUSPENSION OF REVIEW HEARINGS DURING THE FIRST APPEAL

■ In case No. E015967, Wayne challenges the order issued at the subsequent review hearing. He contends that the juvenile court erred by failing to conduct a review and by taking the case off calendar because his appeal in case No. E012488 was pending. Natasha concurs.

Preliminarily, *In re Natasha A., supra*, No. E012488 has since been decided. The juvenile court may already have placed the case back on calendar. On the other hand, it may have continued to keep the case off calendar because Wayne's appeals in cases No. E014958 and E015967 are now pending. We considered requesting further briefs from the parties, advising us on the status of the case below and addressing the possibility that this issue may be moot. On further consideration, however, we believe the issue, even if otherwise moot, comes within the exception to the mootness doctrine for issues of substantial public interest which are capable of repetition, yet evade review. (See *Alfredo A.* v. *Superior Court* (1994) 6 Cal.4th 1212, 1218-1219 [26 Cal.Rptr.2d 623, 865 P.2d 56]; *In re Mark C.* (1992) 7 Cal.App.4th 433, 440 [8 Cal.Rptr.2d 856].) We therefore turn to the merits.

DPSS has cited no authority for suspending review hearings while an appeal is pending, and we know of none. As long as a minor remains a dependent of the juvenile court, the court is statutorily required to hold review hearings every six months. As we noted in part II, *ante*, if the minor has been removed from his or her parent's physical custody, review hearings

---

[5]The trial court stated: "Well, . . . since [the appeal] hasn't been resolved . . . we've got 'the chicken and the egg' problem. Until there's a resolution, admission, or the thing's overturned, I'm not going to disturb it.

"I don't find this letter to be helpful, frankly. He voluntarily suspended therapy from December 12, '93 to May 5, '94, which you know, if he's correct, then that's understandable. If not, it's a big mistake, so the matter is continued in the present status."

are required by section 366.21; if, as here, the minor remains in a parent's custody, review hearings are required by section 364.[6]

It is true that as a general rule, an appeal stays further proceedings in the trial court regarding matters embraced in or affected by the judgment or order appealed from. (Code Civ. Proc., § 916; *Betz* v. *Pankow* (1993) 16 Cal.App.4th 931, 938 [20 Cal.Rptr.2d 841].) This and other basic appellate principles codified in Code of Civil Procedure sections 901 through 923 apply in juvenile dependency proceedings, at least to the extent not inconsistent therewith. (See Code Civ. Proc., § 901; *In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1404 [22 Cal.Rptr.2d 50] [Code Civ. Proc., § 906]; *In re Andrew M.* (1977) 74 Cal.App.3d 295, 301 [141 Cal.Rptr. 350] [Code Civ. Proc., § 914].)

However, the general rule is expressly made subject to a number of statutory exceptions. One of these is Code of Civil Procedure section 917.7, which provides, in pertinent part: "The perfecting of an appeal shall not stay proceedings as to those provisions of a judgment or order which award, change, or otherwise affect the custody, including the right of visitation, of a minor child in any civil action, in an action filed under the Juvenile Court Law, or in a special proceeding . . . ." The dispositional order adjudging the minor to be a dependent child of the court necessarily changed and affected legal custody; in this case, it changed and affected visitation as well. All subsequent review hearings would be proceedings "as to" those provisions of the dispositional order, and hence not stayed.[7]

We do not mean that the juvenile court was fated to hold a succession of ritualistic review hearings until the appeal was finally decided. The purpose of review hearings under section 364 is "[to] determine whether continued supervision is necessary." (§ 364, subd. (c).) Even while the appeal was pending, the juvenile court could have chosen—in its discretion, and subject to all statutory prerequisites—to terminate its jurisdiction. (See *ibid.*) Moreover, if it did choose to terminate its jurisdiction, it could also have chosen to issue an exit order determining custody and visitation. (§ 362.4; see also

---

[6]In addition, if the court places the minor in foster care, section 366 requires review hearings every six months, and if the court adopts a permanent plan of adoption or guardianship for the minor, section 366.3, subdivision (a) requires review hearings every six months until the adoption or guardianship is completed. If the court places the minor other than in a preadoptive home or with a guardian, section 366.3, subdivision (d) requires review hearings every six months, but only if requested by the minor, a parent, or guardian.

[7]Of course, to the extent that subsequent review hearings did not involve matters embraced in or affected by the dispositional order at all, they would not be stayed even under the general rule. (*Betz* v. *Pankow, supra,* 16 Cal.App.4th at p. 938; *In re Marriage of Horowitz* (1984) 159 Cal.App.3d 377, 381-385 [205 Cal.Rptr. 880].)

Cal. Rules of Court, rule 1457.) Thus, our holding comports with the strong public policy against protracted litigation in dependency cases. (See, e.g., *In re Tammy H.* (1992) 11 Cal.App.4th 48, 52 [14 Cal.Rptr.2d 16].)

At a review hearing, as DPSS notes, the "[f]ailure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary." (§ 364, subd. (c).) DPSS argues that Wayne had failed to participate in court-ordered treatment; the point apparently is that even if the juvenile court had held a review hearing, it would have determined that continued supervision was necessary.

DPSS had not filed the required report, however, so the juvenile court had no way of knowing whether Wayne was at last participating in court-ordered treatment. Moreover, its order taking the case off calendar prevented Wayne from ever showing that he *was* participating in treatment. Finally, even assuming Wayne had not participated in treatment and never would, that fact would merely raise a rebuttable presumption that continued supervision was necessary; the juvenile court could nevertheless determine that a suitable exit order would eliminate the conditions that originally led it to assume jurisdiction and render continued supervision unnecessary.

We conclude that by declining to conduct review hearings while the first appeal was pending, the juvenile court erred.

### IV.

#### DISPOSITION

The order entered after the 18-month review hearing is affirmed. The order taking the case off calendar, entered after the further review hearing, is reversed.

Hollenhorst, Acting P. J., and McDaniel, J.,* concurred.

On February 27, 1996, the opinion was modified to read as printed above.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.