883 P.2d 30

**In the Interest of Jane DOE, Born February 22, 1987, Juvenile.**

No. 17297.

Supreme Court of Hawai'i.

Oct. 7, 1994.

Gary Paul Levinson, Honolulu, for mother-appellant.

Jay K. Goss (John Campbell, Jr. and Kenneth Enright, with him on the brief), Deputy Attys. Gen., Honolulu, for Dept. of Human Services-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Appellant, the natural mother (Mother) of Jane Doe (Doe), appeals from the family court's order denying her motion for reconsideration of the family court's determination of exclusive jurisdiction over Doe and award of foster custody of Doe to appellee Department of Human Services (DHS). On appeal, Mother contends that the family court erred in finding jurisdiction and awarding foster custody despite (1) a DHS social worker's unavailability for cross examination at trial and (2) the submission of supplemental DHS investigative reports without amending the original petition for foster custody, resulting in a deprivation of her constitutional right to due process. DHS contends that this court is without appellate jurisdiction because: (1) Mother's motion for reconsideration and notice of appeal were untimely; and (2) Mother did not appeal from a final order.

We conclude that this court has appellate jurisdiction to consider the merits of the appeal. We further conclude that Mother was afforded due process; accordingly, we affirm.

## I. BACKGROUND

On September 23, 1992, the police placed Doe, then five years old, into protective custody after having received reports that she had been physically abused by her caretaker, Wendy Arruda. At the time, Mother was incarcerated, serving a six year sentence for a February 1992 drug-related conviction. Doe was placed in a DHS emergency shelter home.

On September 25, 1992, DHS social worker, Russell Braendlein, filed a petition with the family court alleging that while Mother was imprisoned, Doe had been the victim of physical and sexual abuse and that she was in imminent danger of similar neglect and abuse. The petition asserted that, from February 1992 through September 23, 1992, Doe had been moved four times—twice to Arruda, a recovering heroin addict, once to a family friend who was unwilling to care for the child, and once to a couple accused of sexually molesting the child. The petition further indicated that Doe had no received medical care for at least seven months and that no one had enrolled her in school, which had started in September 1992. The petition sought: (1) an inquiry into the foregoing allegations; (2) temporary foster custody to an appropriate agency; and (3) jurisdiction over Doe and appropriate family members.

As statutorily mandated, Braendlein submitted a written report (the Braendlein report) along with the petition, "evaluat[ing] fully all relevant prior and current information concerning each of the guidelines for determining whether the child's family is presently willing and able to provide the child with a safe family home [hereinafter, safe family home guidelines], as set forth in section 587-25." Hawai'i Revised Statutes (HRS) § 587-40(b)(1) (Supp.1991). The Braendlein report essentially documented the allegations in the petition, that is, that Mother had failed to provide Doe with a safe and stable home.

At the temporary foster custody hearing on October 21, 1992, Mother agreed to the temporary foster custody of Doe by DHS. Mother also stipulated to the admission of the Braendlein report, subject to cross examination and availability of Braendlein. Pur-

suant to HRS § 587–40(c) (Supp.1991), such report is admissible into evidence "provided that the person who prepared the report may be subject to direct and cross-examination as to any matter in the report, unless such person is unavailable." *Id.* Mother, however, would not stipulate to the jurisdiction of the family court because she feared that once the court had jurisdiction over Doe, it could automatically award permanent custody to DHS, which in turn could place Doe for adoption. Instead, Mother voiced her desire to cooperate with DHS in establishing a guardianship for Doe with JoAnn Castro, a friend of Mother.

Sometime following the October 21 hearing, Doe was placed in the care of Castro, with the approval of DHS. Thereafter, DHS conducted studies of Castro's home and agreed to allow Castro to pursue guardianship of Doe.

A pretrial conference was held on May 14, 1993,[1] at which time DHS moved to admit into evidence two reports by social worker Dina Koyanagi, dated April 19, 1993 and May 4, 1993 (the Koyanagi reports).[2] Mother objected, arguing that additional reports could not be admitted into evidence without appropriately amending the petition. Mother reasoned that, because DHS obtained temporary foster custody based on certain facts presented in the petition and original report, adjudication of the petition should be based on those facts and not on additional facts uncovered after the petition was filed, unless the petition was amended to reflect the additional information. The family court admitted the reports subject to cross examination.

At the trial on May 28, 1993, Mother moved to bifurcate the issues regarding jurisdiction and disposition or placement of Doe. Mother argued that, because the evidence to be considered in determining jurisdiction is limited to the information available up to the point of filing the petition, the court should not entertain any evidence uncovered after the petition was filed. Mother maintained that the evidence relevant to the issue of placement could prejudice or confuse the court in its determination of the jurisdictional issue. Mother also reasserted her objection to the admission of the Koyanagi reports, stating:

> [T]he Petition and [the Braendlein report] have to stand on their own because [DHS] moved, they acted, they took … a very bold act in taking a child into custody, into foster custody or temporary custody. And, therefore, the issue becomes … [whether] the Petition and [the Braendlein report are] sufficient … for this [c]ourt to invoke jurisdiction in this case[.]

The court denied Mother's motion to bifurcate.

Mother then moved to dismiss on the ground that because the Braendlein report was admitted into evidence subject to her right to cross examine and, because Braendlein was not going to testify, the case should be dismissed. The motion was denied.

At trial, the DHS's witness, Koyanagi,[3] who by stipulation was qualified as an expert in the field of child protective services, testified that, in the seven months preceding the filing of the petition, Doe was in the care of three different caretakers and was physically or sexually abused by at least two of them. On cross examination, Koyanagi testified that her testimony was based partly on her review of the Braendlein report.

Mother did not call any witnesses and did not testify on her own behalf.

Based on the record, the evidence presented, and in accordance with HRS § 587–63 (Supp.1991),[4] the family court determined

1. Between October 21, 1992 and May 14, 1993, several hearings were conducted; however, those hearings are not pertinent to the disposition of this appeal.

2. Like the Braendlein report, the Koyanagi reports were submitted pursuant to HRS § 587–40.

3. Koyanagi was the only witness to testify on the issue of jurisdiction. The other DHS witness,

Denise Conley, testified on the issue of disposition, which is not an issue on appeal.

4. HRS § 587–63(a) provides:

> If facts sufficient to sustain the petition are established in accord with this chapter, the court shall enter an order finding that the child is a child whose physical or psychological health or welfare has been harmed or is subject to threatened harm by the acts or omis-

that Doe was a child whose physical or psychological health or welfare has been harmed or is subject to threatened harm by the acts or omissions of her family, and on June 2, 1993, orally announced:

As to the issue of jurisdiction, therefore, the [c]ourt finds that its exercise of exclusive original jurisdiction in this case is appropriate for a couple of reasons: [Mother] had herself admitted to being sexually abused by an individual known to me as the step-great-grandfather of [Doe].

Now when [Mother] was incarcerated one of the people she placed [Doe] in the care and custody was that very same individual who as far as I can tell by a preponderance of the evidence also sexually abused [Doe].

Wendy Arruda also physically abused [Doe] and failed to provide adequate medical care.

Based upon those facts the [c]ourt is more than satisfied that [DHS] has shown by a preponderance of the evidence that [Doe] has been harmed by the acts or omissions of her mother.

The court went on to state:

As to placement the [c]ourt finds that [Doe] has done well in the Castro home, she has not acted out, and [she] is more at risk should she be placed out of the Castro home at this time than should she remain in.

[Doe] is accepted by the family according to the evidence. She feels comfortable with the Castro family. And the [c]ourt sees no reason to remove [her] from the [Castro] home at this time.

The court's written order was issued on June 16, 1993.

On June 23, 1993, Mother filed her motion for reconsideration. A hearing was held on June 30, 1993, and the written order denying the motion for reconsideration was entered on July 14, 1993. Mother filed her notice of appeal on July 20, 1993. Findings of fact

sions of the child's family and shall state the grounds for the finding; provided that if all parties consent, the grounds for the finding may be based upon the report or reports submitted pursuant to section 587–40 or other stipulated evidence deemed by the court to

and conclusions of law were entered on August 11, 1993.

## II. *DISCUSSION*

### A. *Appellate Jurisdiction*

#### 1. **Timeliness**

■ DHS asserts that this court is without appellate jurisdiction because Mother failed to timely file her notice of appeal as required by Hawai'i Rules of Appellate Procedure (HRAP) 4(a)(1), which requires that "the notice of appeal … shall be filed by a party with the clerk of the court or agency appealed from within 30 days after the date of the entry of the judgment or order appealed from." However, HRAP 4(a)(4) provides that if a *timely* motion under Hawai'i Family Court Rules (HFCR) Rule 59, for a new trial, or under HFCR Rule 59(g), for reconsideration, is filed "the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion." In other words, HRAP 4(a)(4) tolls the time in which an appeal must be taken if a *timely* motion for reconsideration is filed; then, the time for appeal runs from the order granting or denying the motion for reconsideration.

Under HFCR 59(g)(1), "[a] motion for reconsideration of the decree, order or 'decision and order' shall be filed not later than 20 days after filing of the decree or order or announcement of the 'decision and order,' *whichever occurs sooner.*" (Emphasis added.)

In the present case, the court orally announced its decision on June 2, 1993; the written order was filed on June 16, 1993. Thus, by operation of HFCR 59(g)(1), Mother was required to file her motion for reconsideration not later than June 22, 1993; however, the motion was filed on June 23, 1993, one day after the due date. DHS submits that because Mother's motion for reconsideration was not timely filed, the appeal time

constitute an adequate basis for the court's invoking its jurisdiction, which report or reports or stipulated evidence may be admitted into evidence subject to reservation by the parties of their right to cross-examination subject to section 587–40(c).

was not tolled. Pursuant to HRAP 4(a)(1), Mother's notice of appeal should have been filed on July 16, 1993; Mother filed her notice of appeal on July 20, 1993, four days late. Consequently, DHS argues that this court is without appellate jurisdiction.

Based on the aforementioned analysis, it appears that DHS is correct that we are without appellate jurisdiction to consider the merits of this appeal. The problem, however, lies in the indisputable conflict between HFCR 59(g)(1) and HRS § 571–54 (1985). HRS § 571–54 provides in pertinent part:

> An order or decree entered in a proceeding based upon section 571–11(1), (2), (6), or (9)[5] shall be subject to appeal to the supreme court *only as follows:*

> Within twenty days *from the date of the entry of any such order or decree,* any party directly affected thereby may file a motion for a reconsideration of the facts involved.

*Id.* (emphasis added).

Although the statute states that any party "may" file a motion for reconsideration, it also provides that "[a]n order or decree ... shall be subject to appeal to the supreme court only" if the party files such a motion. In other words, Mother's right to appeal the family court's ruling in this case required her to file a motion for reconsideration; however, the time for filing, under the statute, runs "from the date of the entry of any such order or decree." *In re Doe,* 3 Haw.App. 391, 394, 651 P.2d 492, 494 (1982). As noted previously, the court's written order was entered on June 16, 1993; Mother's motion was filed on June 23, 1993, well within the twenty day requirement set forth under the statute. It follows then that if Mother's motion was timely, the appeal time was tolled, and her notice of appeal would have been due on August 14, 1993. Again, as previously noted, Mother's notice of appeal was filed on July 20, 1993. We must therefore resolve the conflict between the "whichever occurs sooner" language of HFCR 59(g)(1) as it pertains to a court's decree, order, or announcement and the "date of entry" language of the statute.

Article VI, section 7 of the Hawai'i Constitution provides that "[t]he supreme court shall have power to promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedure and appeals, which shall have the force and effect of law." However, pursuant to HRS § 602–11 (1985), "[s]uch rules shall not abridge, enlarge, or modify the substantive rights of any litigant, nor the jurisdiction of any of the courts, nor affect any statute of limitations."

The law is well settled that "a timely filing of the notice of appeal is a prerequisite to this court's jurisdiction." *Independence Mortgage Trust v. Glenn Constr. Corp.,* 57 Haw. 554, 555, 560 P.2d 488, 489 (1977); *Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988) (" 'the timely filing of a notice of appeal is a jurisdictional prerequisite to the hearing of appeal' "); *see Bacon v. Karlin,* 68 Haw. 648, 727 P.2d 1127 (1986) (failure to file a timely notice of appeal is a jurisdictional defect that can neither be waived by the parties nor disregarded by the court in the exercise of judicial discretion). Inasmuch as the timely filing of a notice of appeal is a prerequisite to appellate jurisdiction, a court cannot, by promulgating rules or otherwise, modify the deadline for filing. *See* HRS § 602–11; *see also Houston,* 487 U.S. at 279, 108 S.Ct. at 2386–87 (Scalia, J., dissenting). Whenever the oral announcement of the court's decision precedes the entry of the court's written order, Rule 59(g)(1) mandates an earlier motion deadline than does the statute and consequently infringes on an aggrieved party's right to appeal by curtailing the time in which to file a timely notice of appeal.

We are compelled to resolve the conflict between HFCR 59(g)(1) and HRS § 571–54 in favor of the statute and hold HFCR 59(g)(1) void based on: (1) HRS § 602–11, which restricts this court from promulgating rules that may "abridge, enlarge, or modify ... the jurisdiction of any of the courts"; (2)

---

**5.** HRS § 571–11(9) (1985) provides in pertinent part: "the court shall have exclusive original jurisdiction in proceedings ... for the protection of any child under chapter 587 [Child Protective Act]."

the well settled law that timeliness of a notice of appeal is a jurisdictional prerequisite; and (3) HRS § 571–54, which requires a motion for reconsideration as a prerequisite to appeal.

Accordingly, we hold that Mother's motion for reconsideration and notice of appeal were both timely filed.

### 2. Finality of the Court's Order

■ Alternatively, DHS contends that, even if Mother filed a timely notice of appeal, appellate jurisdiction is lacking because Mother did not appeal from a final order within the meaning of HRS § 641–1(a) (1985).[6] Relying on HRS §§ 587–2 (Supp. 1992) [7] and 587–72(a) (Supp.1992),[8] DHS argues that the requisite degree of finality is lacking because neither the determination of jurisdiction over Doe nor the award of foster custody permanently affects Mother's parental rights.

Admittedly, "we may hear appeals from only final orders, or decrees except as otherwise provided by law." HRS § 641–1(a). However, it is widely acknowledged that " 'a final judgment or decree is not necessarily the last decision of a case. *What determines the finality of an order or decree is the nature and effect of the order or decree.*' " *Security Pac. Mortgage Corp. v. Miller,* 71 Haw. 65, 69, 783 P.2d 855, 857 (1989) (emphasis added) (citation omitted).

Numerous jurisdictions have held that an infringement upon parental custody rights is an appealable decision even though the requisite finality normally required for appeals is lacking. *See In Interest of N.D.,* 857 S.W.2d 835 (Mo.Ct.App.1993); *In re Elizabeth M.,* 232 Cal.App.3d 553, 283 Cal.Rptr. 483 (1991); *In re Murray,* 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990); *In re Yavapai County Juvenile Action No. J–8545,* 140 Ariz. 10, 680 P.2d 146 (1984). They have so held for two principal reasons. First, a parent's right to custody and control of one's children has long been recognized as a fundamental one. *See Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923). "It is cardinal ... that the custody, care and nurture of the child reside first in the parents," *H.L. v. Matheson,* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981), and is constitutionally protected against unwarranted state infringement. *Id.*

■ Second, the "standard for a 'final' judgment in a juvenile matter differs from that under general civil law.[9] The very nature of a juvenile proceeding entails an ongoing case which does not result in a 'final' order, as that term is generally defined." *In Interest of N.D.,* 857 S.W.2d at 842 (citation omitted). Accordingly, a family court's exercise of continuing jurisdiction over a child does not defeat a right to appeal. *Id.*

The Supreme Court of Ohio in *In re Murray* held that the juvenile court's award of temporary custody of a neglected or dependent child to a public children services agency is a final appealable order. 52 Ohio St.3d at 158–59, 556 N.E.2d at 1173. Although the agency has temporary custody, such custody can potentially continue for a considerable length of time, leaving parents without the possibility of appellate review until such time permanent custody is made to the agency or temporary custody is terminated. *Id.* at 158, 556 N.E.2d at 1173. Moreover, an appeal at a later time will not reverse the course of

---

**6.** HRS § 641–1(a) permits appeals in civil matters only from "final judgments, orders, or decrees of circuit and district courts." HRS § 571–54 provides that any order or decree of the family court may be appealed to the supreme court "upon the same terms and conditions as in other cases in the circuit court."

**7.** DHS submits that under HRS § 587–2, an award of foster custody does not permanently affect Mother's parental rights because as soon as Mother is willing and able to provide Doe with a safe family home, the child must be returned.

**8.** HRS § 587–72(a) requires review hearings, at a minimum, every six months until the court's jurisdiction has been terminated or the court has ordered a permanent plan and has set the case for a permanent plan review hearing.

**9.** We note that, due to the nature of a "final" judgment in child custody cases, the requirements for appealability set forth in *Jenkins v. Cades Schutte Fleming & Wright,* 76 Hawai'i 115, 869 P.2d 1334 (Sup.1994), are inapplicable in such custody cases.

action already completed. *Id.* at 160, 556 N.E.2d at 1174. Immediate review is necessary because "parents have 'fundamental liberty interest[s]' in the care, custody, and management of the child." *Id.* at 157, 556 N.E.2d at 1171 (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982)).

Similarly, in *In re Yavapai County Juvenile Action No. J–8545*, the Arizona Supreme Court held that orders declaring children dependent are considered final orders subject to appeal because they affect fundamental rights. 140 Ariz. at 14–15, 680 P.2d at 150–51. The court further held that orders reaffirming findings that children are dependent are also treated as final appealable orders because "[f]rom a practical perspective, each periodic review of a dependency determination is a new determination of whether or not a child is dependent." *Id.* The court reasoned that, despite the fact that a determination of dependency does not dispose of all correlative matters, such as assignment of legal custody, and notwithstanding the possibility of duplicative or piecemeal appeals,

> [a] parent denied and redenied control over his or her children must have the right to appeal the initial and subsequent denials. This does not mean that he or she shall be able to challenge a custodial arrangement every week or every month. What it means is that an aggrieved party may appeal an order issued pursuant to the juvenile court's periodic review of a determination of dependency or of a custodial arrangement[.] Though this may impose an additional burden on our Court of Appeals, it is a burden the Court of Appeals must bear in light of the fundamental right at stake.

*Id.* at 14, 680 P.2d at 150 (citation omitted); *see also In re Elizabeth M.*, 232 Cal.App.3d 553, 283 Cal.Rptr. 483 (an order adjudicating minor a dependent child is considered to be an appealable final judgment); *In Interest of N.D.*, 857 S.W.2d 835 (juvenile court's exercise of continuing jurisdiction over child does not defeat parent's right to appeal from order denying him or her visitation).

10. HRS § 587–40 provides in pertinent part:

Here, we note that once the court exerts jurisdiction over Doe and awards foster custody to DHS, Mother's legal rights regarding her child include: (1) the right to supervised visitation; (2) to consent to adoption, marriage, and medical care or treatment; and (3) the responsibility for support of the child. HRS § 587–2. These "fundamental liberty interests" in the custody and care of her child compel appellate review even though the degree of finality normally required for an appeal has not been met. As indicated above, the manifest importance of the right of a parent to raise his or her child makes this exception to the finality rule necessary, despite any problems that may be presented by duplicative appeals.

We therefore conclude that, under the circumstances, the family court's determination of jurisdiction, followed by the award of foster custody, met the requisite degree of finality of an appealable order; accordingly, this court is vested with appellate jurisdiction.

### B. Standard of Review

■ The family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. *Fujikane v. Fujikane*, 61 Haw. 352, 355, 604 P.2d 43, 45 (1979). Under the abuse of discretion standard of review, the family court's decision will not be disturbed unless "the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant ... [and its] decision clearly exceed[ed] the bounds of reason." *Bennett v. Bennett*, 8 Haw.App. 415, 416, 807 P.2d 597, 599 (1991).

### C. Due Process

#### 1. Braendlein's Availability for Cross Examination

■ Mother argues that she was denied due process because Braendlein was not available for cross examination regarding his report submitted pursuant to HRS § 587–40 (Supp.1991).[10]

> (a) [DHS] ... shall make every reasonable effort to submit written reports ... to the court[.]

At the temporary foster custody hearing on October 21, 1992, Mother stipulated to the admission of Braendlein's report, subject to cross examination. At the May 14, 1993 pretrial conference, the following colloquy between court and counsel transpired:

> [Court]: The court after hearing pre-record discussions and representations by counsel for the parties feels that we should set this matter for a ... half day trial. Is that [going to be] sufficient time?
>
> [DHS]: Is this [going to] be a stip[ulated] facts trial?
>
> [Mother]: Well—
>
> [Court]: Well, on the jurisdictional matter[?]
>
> [Mother]: On the (indiscernible) ... issue it[ ] probably will be. Yeah, it will.
>
> [Court]: But the placement issue,—
>
> [DHS]: Yeah.
>
> [Court]: [H]ow many witnesses?
>
> [DHS]: I'm predicting right now maybe two witnesses on my part.
>
> [Court]: How [a]bout you, [Mother]?
>
> [Mother]: Probably two witnesses.
>
> [Court]: Are they identified in your pretrial statement?
>
> [Mother]: Yes[.] One would be Miss Castro, the other would be my client.

Although an important portion was indiscernible, the only logical inference to be drawn from the aforementioned exchange is that the court and the parties had an understanding that the jurisdictional issue would be submitted on the facts as set forth in the petition and the Braendlein report. Moreover, Mother concedes that Braendlein's report, and therefore his testimony, was pertinent only to the determination of jurisdiction. Thus, having stipulated to the facts regarding jurisdiction, Mother implicitly waived her right to cross examine Braendlein regarding his report.

Nevertheless, Mother took a markedly different position at the trial on May 28, 1993

when she moved for dismissal on the ground that Braendlein was not available to testify. Upon query by the court regarding the reason for not having filed a written motion earlier, Mother replied that she had "just discovered" the fact that Braendlein would not be available to testify. The record, however, indicates that Mother had sufficient notice that Braendlein would not be called as a witness. At the May 14, 1993 pretrial conference, DHS informed the court of the identity of its only two witnesses, Denise Conley on the placement issue, and Dina Koyanagi on the jurisdictional issue, if necessary. Further, Mother was sufficiently apprised of DHS's witnesses through several prior pretrial statements and witness lists on Braendlein was not listed as a witness. Although DHS never mentioned Braendlein as its witness, Mother did not raise an objection until the morning of trial. Additionally, because Mother agreed to stipulate to the facts regarding jurisdiction, Braendlein's testimony regarding his report became unnecessary.

Therefore, having stipulated to jurisdiction and having failed to file a motion to compel Braendlein's testimony at trial, despite prior notice to Mother by DHS that Braendlein would not be called as a witness, Mother effectively waived her right to cross examine Braendlein.

### 2. The Koyanagi Reports

■ Mother argues that the court should have ordered DHS to amend its petition to reflect those facts uncovered after the original petition was filed, which were memorialized in the Koyanagi reports. Mother contends that in adjudicating the case, the court should rely only on the facts available at the time the petition was filed, unless the petition is amended to formally include those additional facts reported in the Koyanagi reports. Mother submits that her right to due process compelled the formal amendment to the original petition in order that she could have

----

....

(c) A written report submitted pursuant to subsection (a) shall be admissible and may be relied upon to the extent of its probative value in any proceeding under this chapter; *provided*

*that the person or persons who prepared the report may be subject to direct and cross-examination as to any matter in the report, unless such person is unavailable.*
(Emphasis added.)

been "properly apprised of new facts following the initial investigation." Mother's argument is without merit.

DHS is statutorily required to submit to the court written reports regarding the safe family home guidelines at the time a petition is filed and also "prior to or upon the date of a hearing if the report is supplemental to a report which was submitted," HRS § 587–40(a), at the time of filing. At trial, the court is required to consider such reports in rendering a determination concerning the petition. HRS § 587–63(a) (Supp.1992) expressly provides that

> [t]he court shall consider the evidence which is relevant to the adjudication; provided that the court shall consider fully all relevant *prior and current information* pertaining to the safe family home guidelines, as set forth in section 587–25 and *the report or reports* submitted pursuant to section 587–40[.]

(Emphasis added.) The section, however, does not require amendments to the petition whenever supplemental reports are submitted.

Although HRS § 587–40(a) expressly provides that copies of the reports be provided to the "parties or their counsel or guardian ad litem," we are unable to discern from the record when and how the Koyanagi reports were provided to Mother. Regardless, Mother does not allege that she was not properly served nor that she had no knowledge of the existence of the Koyanagi reports.[11] Mother merely asserts that because supplemental reports were submitted, a formal amendment to the petition was required. As stated previously, HRS § 587–63(a) does not require amendments to the petition when supplemental reports are submitted but does require the court to consider such reports in rendering a determination regarding the petition. Therefore, we hold that the family court properly considered the Koyanagi reports.

[11]. The record indicates that at least as of May 14, 1993, Mother had knowledge regarding the Koyanagi reports because she objected to the admission of those reports at the May 14, 1993 pretrial conference. Moreover, copies of the re-

III. *CONCLUSION*

Based on the foregoing, we hold that (1) this court has appellate jurisdiction and (2) Mother was afforded due process of law. Accordingly, we affirm the family court's order denying Mother's motion for reconsideration.

port were attached to the memorandum in opposition to Mother's motion for immediate review to prevent removal of minor, which memorandum was served upon Mother by DHS on or about May 21, 1993.