**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000053
20-DEC-2021
08:04 AM
Dkt. 63 SO**

NO. CAAP-21-0000053

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF TC AND RC

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-S NO. 19-0021K)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Hiraoka and McCullen, JJ.)

Appellant Mother (**Mother**) appeals from the Order Related to Continued Second Permanency Hearing, filed on January 8, 2021 (**1/8/21 Order Re: Second Permanency Hearing**) in the Family Court of the Third Circuit (**Family Court**),[1] related to Mother's two children (**Children**)

The State of Hawaiʻi, Department of Human Services (**DHS**) contends that this court lacks appellate jurisdiction because the 1/8/21 Order Re: Second Permanency Hearing is not an appealable order. Thus, as a threshold matter, we address our jurisdiction in this appeal.

Under Hawaii Revised Statutes (**HRS**) § 571-54 (2018), "appeals in family court cases, as in other civil cases, may be taken only from (1) a final judgment, order, or decree, . . . or

---

[1] The Honorable Mahilani E.K. Hiatt signed the Order Related to Continued Second Permanency Hearing, and the Honorable Joseph P. Florendo, Jr. presided at the hearing.

(2) a certified interlocutory order."  In re Doe Children, 96 Hawaiʻi 272, 283, 30 P.3d 878, 889 (2001) (citations omitted). "'Final order' means an order ending the proceedings, leaving nothing further to be accomplished."  Familian NW., Inc. v. Cent. Pac. Boiler & Piping, Ltd., 68 Haw. 368, 370, 714 P.2d 936, 937 (1986) (citation omitted).  "However, it is widely acknowledged that a final judgment or decree is not necessarily the last decision of a case.  What determines the finality of an order or decree is the nature and effect of the order or decree."  In re Doe, 77 Hawaiʻi 109, 114, 883 P.2d 30, 35 (1994) (internal quotation marks, emphasis, and citation omitted).

"The very nature of a family court chapter 587 proceeding entails an ongoing case which does not result in a 'final' order, as that term is generally defined, because, under chapter 587, the family court retains continuing jurisdiction over the case in order to prevent future harm or threatened harm to a child."  In re Doe Children, 96 Hawaiʻi at 283, 30 P.3d at 889 (brackets and citations omitted).  Despite the Family Court's continuing jurisdiction over a child, "[i]mmediate review is necessary because parents have fundamental liberty interests in the care, custody, and management of the child."  In re Doe, 77 Hawaiʻi at 115, 883 P.2d at 36 (internal quotation marks, brackets, and citations omitted).  The Hawaiʻi Supreme Court thus recognized favorably that "an infringement upon parental custody rights is an appealable decision even though the requisite finality normally required for appeals is lacking[,]" and held that "fundamental liberty interests in the custody and care of [a mother's] child compel appellate review even though the degree of finality normally required for an appeal has not been met."  Id. at 114-15, 883 P.2d at 35-36 (internal quotation marks omitted) (emphasis added).

At a permanency hearing, the Family Court is required to make findings as to certain issues and the Family Court also shall order: a child's reunification with a parent or parents; the child's continued placement in foster care under certain

2

circumstances; <u>or</u> a permanent plan with a goal as specified by statute.  <u>See</u> HRS § 587A-31 (2018).[2]

---

[2]  HRS § 587A-31 states:

> **§587A-31  Permanency hearing.**  (a)  A permanency hearing shall be conducted within twelve months of the child's date of entry into foster care or within thirty days of a judicial determination that the child is an abandoned infant or that aggravated circumstances are present.  A permanency hearing shall be conducted at least every twelve months thereafter for as long as the child remains in foster care under the placement responsibility of the department or an authorized agency, or every six months thereafter if the child remains in the permanent custody of the department or an authorized agency.
> (b)  The court shall review the status of the case to determine whether the child is receiving appropriate services and care, that case plans are being properly implemented, and that activities are directed toward a permanent placement for the child.
> (c)  <u>At each permanency hearing, the court shall make written findings pertaining to</u>:
> (1)  The extent to which each party has complied with the service plan and progressed in making the home safe;
> (2)  <u>Whether the current placement of the child continues to be appropriate and in the best interests of the child or if another in-state or out-of-state placement should be considered</u>;
> (3)  The court's projected timetable for reunification or, if the current placement is not expected to be permanent, placement in an adoptive home, with a legal guardian, or under the permanent custody of the department or an authorized agency;
> (4)  Whether the department has made reasonable efforts, in accordance with the safety and well-being of the child, to:
> (A)  Place siblings who have been removed from the family home with the same resource family, adoptive placement, or legal guardians; and
> (B)  Provide for frequent visitation or other ongoing interactions with siblings who are not living in the same household;
> (5)  <u>The appropriate permanency goal for the child, including whether a change in goal is necessary</u>;
> (6)  Whether the department has made reasonable efforts to finalize the permanency goal in effect for the child and a summary of those efforts;
> (7)  The date by which the permanency goal for the child is to be achieved;
> (8)  In the case of a child who has attained
>                                               (continued...)

3

[2](...continued)

> fourteen years of age, the services needed to assist the child with the transition from foster care to independent living; and

(9)  Consultations with the child in an age-appropriate manner about the proposed plan for permanency or transition from foster care to independent living.

(d)  <u>At each permanency hearing, the court shall order</u>:

(1)  The child's reunification with a parent or parents;

(2)  The child's continued placement in foster care, where:

(A)  Reunification is expected to occur within a time frame that is consistent with the developmental needs of the child; and

(B)  The safety and health of the child can be adequately safeguarded; or

(3)  A permanent plan with a goal of:

(A)  Placing the child for adoption and when the department will file a motion to set the matter for the termination of parental rights;

(B)  Placing the child for legal guardianship if the department documents and presents to the court a compelling reason why termination of parental rights and adoption are not in the best interests of the child; or

(C)  Awarding permanent custody to the department or an authorized agency, if the department documents and presents to the court a compelling reason why adoption and legal guardianship are not in the best interests of the child.

(e)  <u>At each permanency hearing where a permanent plan is ordered, the court shall make appropriate orders to ensure timely implementation of the permanent plan and to ensure that the plan is accomplished within a specified period of time</u>.

(f)  A permanency hearing may be held concurrently with a periodic review hearing.

(g)  If the child has been in foster care under the responsibility of the department for a total of twelve consecutive months or an aggregate of fifteen out of the most recent twenty-two months from the date of entry into foster care, the department shall file a motion to terminate parental rights, unless:

(continued...)

Here, DHS filed a Permanent Plan on August 19, 2020, recommending continued foster care until a determination whether the Children could be reunified with a suitable and appropriate parent; and if reunification with a parent was not possible, DHS recommended placement with paternal grandparents.  On September 23, 2020, the Family Court issued its Orders Related To <u>First</u> Permanency Hearing in which it ordered the "proper concurrent permanency plan is reunification or adoption."

Subsequently, a Permanent Plan filed by DHS on November 25, 2020, noted that on November 10, 2020, the Family Court approved foster care placement of the Children with their paternal grandparents in Idaho and thus "DHS recommends the proposed <u>revised</u> case goals and objectives be <u>reunification with Father</u>" (emphasis added).

After a hearing on December 29, 2020, the Family Court entered the 1/8/21 Order Re: Second Permanency Hearing, which is the subject of this appeal, and ordered among other things: that foster custody be continued; and that the proper permanency plan was reunification.  Given DHS's most recent permanent plan, which had been filed and then admitted into evidence, the effect of this order was that the revised permanency plan approved by the Family Court now called for reunification with Father who resided

---

[2](...continued)

 (1) The department has documented in the safe family home factors or other written report submitted to the court a compelling reason why it is not in the best interest of the child to file a motion; or

 (2) The department has not provided to the family of the child, consistent with the time period required in the service plan, such services as the department deems necessary for the safe return of the child to the family home.

 (h) Nothing in this section shall prevent the department from filing a motion to terminate parental rights if the department determines that the criteria for terminating parental rights are present.

(Emphases added).

in Idaho.  The 1/8/21 Order Re: Second Permanency Hearing also found that the projected date for reunification was February 2021.  Further, by the time of this order, the Children had been relocated out-of-state to Idaho and placed with their paternal grandparents.  The order found that this out-of-state placement was safe, appropriate and in the best interest of the Children.

Given these circumstances, we conclude the 1/8/21 Order Re: Second Permanency Hearing infringed upon Mother's parental custody rights and is an appealable order.  Id. at 115, 883 P.2d at 36 (citing In re Yavapai Cty. Juvenile Action No. J-8545, 680 P.2d 146, 150-51 (Ariz. 1984) (en banc) ("A parent denied and redenied control over his or her children must have the right to appeal the initial and subsequent denials.")).  We thus have jurisdiction to review the merits of this appeal.

On appeal, Mother contends the Family Court erred by **(1)** refusing to provide Mother with an opportunity to have an evidentiary hearing on a permanent placement plan conducted pursuant to HRS § 587A-31, **(2)** failing to ensure that her Children in foster custody were provided proper notice of court hearings and by failing to appoint an attorney for the Children to protect their rights, **(3)** admitting reports into evidence and not giving Mother an opportunity to cross-examine the preparers of the reports, **(4)** finding the Children's current placement is safe and appropriate, **(5)** finding Petitioner-Appellee DHS made reasonable efforts to finalize a permanency plan, **(6)** finding Father made progress and Mother made some progress toward resolving the problems that necessitated placement **(7)** finding "each term, condition, and consequence of the Interim Family Service Plan dated April 23, 2019 has been explained to and is understood by the children's mother to be continued," **(8)** finding the Children have been consulted, in an age appropriate manner, about the proposed permanency and/or transition goal, and **(9)** finding "[t]he out-of-state placement with the children's

paternal grandparents proposed by DHS is safe, appropriate, and in the best interest of the children."

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows:

**Points of error (1) and (3):** Mother contends the Family Court erred by refusing to provide her with an opportunity to have an evidentiary hearing on a permanent placement plan. Mother asserts HRS § 587A-31 requires the Family Court to hold a hearing and make findings of fact.  Thus, Mother argues the Family Court should have received and properly considered sufficient information before making such findings, including providing an opportunity for all parties to present evidence on issues related to the required findings, and the failure to allow Mother to testify and present evidence was prejudicial and a violation of due process.

Mother has a fundamental liberty interest in the right of care, custody, and control of the Children, and thus "the State may not deprive her of this interest without providing a fair procedure for deprivation."  Doe v. Doe, 120 Hawaiʻi 149, 168, 202 P.3d 610, 629 (App. 2009) (citations omitted).  "At its core, procedural due process of law requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant liberty interest."  Id. (emphasis added)(quoting State v. Bani, 97 Hawaiʻi 285, 293, 36 P.3d 1255, 1263 (2001)).

At a permanency hearing, the Family Court is required to make written findings as specified by statute.  See HRS § 587A-31(c).  Pursuant to HRS § 587A-18 (2018), DHS is required to submit certain reports to the Family Court in Child Protective Act proceedings such as this case, including reports prior to periodic review hearings and permanency hearings.  HRS § 587A-18(d) provides that "[a] written report submitted pursuant to this section shall be admissible and relied upon to the extent of

7

its probative value in any proceeding under this chapter, <u>subject to the right of any party to examine or cross-examine the preparer of the report</u>." (Emphasis added). A permanency hearing is a proceeding within the meaning of HRS Chapter 587A and thus a party to the proceeding must be given the right to examine or cross-examine the preparer of reports admitted into evidence pursuant to HRS § 587A-18. Examination regarding such reports is particularly relevant when the reports are the bases to support findings required by HRS § 587A-31.

At the end of a hearing on November 10, 2020, at which the Family Court ordered the Children could be placed with their paternal grandparents in Idaho, the parties discussed scheduling the second permanency hearing. Mother asserted that the December 8, 2020 permanency hearing should be an evidentiary hearing. DHS asserted, however, that the Family Court had a practice that permanency hearings were not contested evidentiary hearings and that "[t]he only evidence presented would be the permanency plan and any reports submitted in preparation for the [permanency] hearing." DHS's position thus made clear that it intended to rely upon reports admitted into evidence for the Family Court to make the required findings under HRS § 587A-31(c).

On December 8, 2020, a permanency hearing was held. Mother raised several motions verbally at the hearing. First, Mother requested a stay regarding a prior court order allowing the Children to travel to Idaho. The motion for a stay was denied. Second, Mother asserted a motion to continue the permanency hearing, in part because DHS filed an updated report on November 25, 2020, two days late, and the Guardian Ad Litem (**GAL**) also filed an untimely report given a deadline set by the court. The Family Court granted a continuance of the permanency hearing to December 29, 2020. Third, Mother requested that the permanency hearing be an evidentiary hearing, asserting that she objected to the permanency plan because its stated goal of reunification was only with Father. DHS stated that based on available information, Father was on track to be the first parent

to create a safe family home but that DHS had not ruled out reunification with Mother.  After Father's counsel objected to the lack of a filed written motion "to know what the issues are and be able to respond," the Family Court noted that during the November 10, 2020 hearing Mother was instructed to submit a written request as to why the permanency hearing should be an evidentiary hearing but nothing was submitted.  The Family Court granted a continuance of the December 8, 2020 permanency hearing but again requested Mother to file a motion "explaining why it should be an evidentiary hearing for the next permanency hearing."  Mother's counsel responded "I will file a written motion for an evidentiary hearing.  And one of the grounds for the evidentiary hearing is the statute that provides any party with the right to examine the preparer of the report."

At the continued permanency hearing, on December 29, 2020, DHS requested that the Family Court adopt DHS's proposed order that had been submitted to the court, with a revision to update the location of the Children.  In turn, Mother argued, *inter alia*, that the Family Court was obligated to make certain findings under HRS § 587A-31(c), that she had a right under HRS § 587A-18(d) to examine those who had prepared the reports submitted to the Family Court, and that she had the right to present her testimony and other evidence.  The Family Court ruled that: it would approve the order proposed by DHS; and that although Mother argued for an evidentiary hearing, she had been on notice since the prior hearing on December 8, 2020, that she should file a written motion, and that if a written motion had been filed it was untimely for the continued permanency hearing and thus the court would not consider Mother's contentions made at the present hearing.  No witnesses were called or other evidence presented at the hearing.  The 1/8/21 Order Re: Second Permanency Hearing, entered after the December 29, 2020 hearing, provides that DHS's Permanent Plan filed on November 25, 2020, as well as the GAL's Fourth Report To The Court, filed on December 8, 2020, "are admitted into evidence and made a part of the

9

record, subject to cross-examination thereon[.]"  The reference in the order that the admitted reports were subject to cross-examination is not correct, as Mother was not allowed to examine any witnesses, including those who had prepared these reports.

Based on this record, we first conclude the Family Court erred in requiring Mother to submit a written motion prior to allowing her to examine or cross-examine the preparers of the reports or to present her own testimony and other evidence.  Rule 10(a) of the Hawaiʻi Family Court Rules (**HFCR**) states in part: "All motions, except when made during a hearing or trial, shall be in writing, shall state the grounds therefor, shall set forth the relief sought, and if involving a question of law shall be accompanied by a memorandum in support of the motion."  HRS § 587A-18(d) expressly allowed Mother to examine or cross-examine the preparers of DHS's reports.  Further, even if HFCR Rule 10(a) was applicable, it was satisfied.  "The purpose of a motion in writing is to give notice to the opposite party and state the grounds of the motion.  There is nothing sacrosanct about the writing."  Benezet v. Nowell, 42 Haw. 581, 584 (Haw. Terr. 1958) (interpreting Hawaiʻi Rules of Civil Procedure Rule 7(b)).  During the hearing on November 10, 2020, Mother orally informed the Family Court that she did not agree to the permanency plan and wanted the permanency hearing set for December 8, 2020, to be an evidentiary hearing.  During a permanency hearing on December 8, 2020, Mother explained that she objected to the permanency plan because it only proposed reunification with Father.  At the continued permanency hearing on December 29, 2020, Mother again objected to the permanency plan and requested to exercise her right to examine the preparers of submitted reports and present her own testimony.  Thus, Mother made her motion for an evidentiary hearing during a hearing and was not required to file a written motion under HFCR Rule 10(a).  In re AB, 145 Hawaiʻi 498, 515, 454 P.3d 439, 456 (2019), as amended (Dec. 16, 2019) (holding that, even if HFCR Rule 10(a) applied to an application to intervene, the requesting party made the request during a

10

hearing and thus the request was exempt from the writing requirement under the rule).

Second, HRS § 587A-18(d) explicitly provides Mother should have been afforded an opportunity to examine or cross-examine the preparer of the DHS reports that would be relied upon during the permanency hearing.[3]  Mother made this argument and cited the statutory provision, albeit verbally at a hearing. Given the record, Mother should have been provided with the rights to examine witnesses under this statutory provision.  We note that admission of a report into evidence under HRS § 587A-18(d) is not contingent upon actual cross examination of the preparer of the report, however such admission subjects the preparer of a report to cross examination.  Therefore, the Family Court did not err by admitting into evidence DHS's Permanent Plan filed on November 23, 2020; however, admission of this report meant that Mother should have been allowed to examine or cross-examine those who prepared that report or any DHS report admitted and relied upon by the Family Court.

Furthermore, we conclude that given Mother's due process rights to be heard at a meaningful time and in a meaningful manner, she should have also been afforded the opportunity to testify at the second permanency hearing and allowed to present other relevant evidence.  We recognize that the Family Court must have discretion to properly manage its calendars and the proceedings before it.  However, given Mother's parental custody rights at issue in this case, the Family Court should have allowed her the opportunity to present evidence relevant to the issues before the court in the second permanency hearing.  See AC v. AC, 134 Hawaiʻi 221, 339 P.3d 719 (2014)

---

[3]  HRS § 587A-18 applies to reports filed by "the department or other authorized agencies."  For purposes of Chapter 587A, "[d]epartment" is defined as "the department of human services and its authorized representatives[;]" and "[a]uthorized agency" is defined as "the department, other public agency, or a person or organization that is licensed by the department or approved by the court to receive children for control, care, maintenance, or placement." HRS § 587A-4.

(holding the Family Court abused its discretion in denying a mother's motion for additional time to present evidence relevant to determining the best interest of the children in a case involving custody over minor children).  Thus, the Family Court erred in denying Mother the opportunity to testify and to present relevant evidence.

**Point of error (2):**  Mother contends the Family Court erred by failing to ensure the Children were provided proper notice of court hearings under rights established in HRS § 587A-3.1 (2018)[4] and by failing to appoint an attorney for the children to protect their rights pursuant to HRS § 587A-16(c)(6)(2018).[5]

---

[4]  HRS § 587A-3.1 provides, in relevant part:

> **[HRS § 587A-3.1].  Rights of children in foster care.**
> (a) The department or an authorized agency shall ensure, whenever possible, that a child in foster care will:
> . . . .
> (6)    Receive notice of court hearings, and if the child wishes to attend the hearings, the department or authorized agency shall ensure that the child is transported to the court hearings;
> (7)    Have in-person contact with the child's assigned child welfare services worker;
> . . . .
> (b) In addition to the rights established in subsection (a), a child in foster care shall have the following rights:
> . . . .
> (2)    To meet with and speak to the presiding judge in the child's case;
> (3)    To have regular in-person contact with the child's court appointed guardian ad litem, court appointed special advocate, and probation officer;
> (4)    To ask for an attorney, if the child's opinions and requests differ from those being advocated by the guardian ad litem pursuant to section 587A-16(c)(6);
> . . . .

[5]  HRS § 587A-16(c) states:

> (c)  A guardian ad litem shall, unless otherwise ordered by the court:
> . . . .
> (6)    Inform the court of the child's opinions and requests.  If the child's opinions and requests differ from those being advocated by the

(continued...)

12

Mother claims she preserved these points of error by repeatedly requesting an attorney for the Children, both orally and in her December 29, 2020 "Motion for Evidentiary Hearing and Appointment of an Attorney for the Children," but that her requests were denied.  Mother cites generally to the court minutes without specifying where in the court minutes she requested appointment of an attorney under HRS § 587A-16(c)(6).  Moreover, the minutes do not appear to reflect Mother made such a request.[6]  With regard to Mother's "Motion for Evidentiary Hearing and Appointment of Attorney for the Children," it was transmitted electronically to DHS and the Family Court[7] prior to the start of the December 29, 2020 continued permanency hearing but was not filed until approximately two hours after the hearing concluded.  The Family Court stated it would not hear the motion at the permanency hearing but did not deny it.

On this record, we cannot conclude that Mother properly raised the issues in her second point of error before the Family Court.  Moreover, to the extent Mother asserts that the Family Court should have acted *sua sponte*, Mother presents no argument and does not point to anything in the record to establish that the Family Court should have acted *sua sponte* as she contends.

---

[5](...continued)
> guardian ad litem, the court shall evaluate and determine whether it is in the child's best interests to appoint an attorney to serve as the child's legal advocate concerning such issues and during such proceedings as the court deems to be in the best interests of the child.

[6]  Although Mother relies solely on the minutes, which fail to reflect that she raised the issue on appeal, we note the transcript for the December 29, 2020 hearing reflects that Mother's attorney stated "the children have statutory rights under Section 3.1 of [chapter 587A]. And the Court has a duty under -3.1(c) to protect those children's rights, which has not happened yet and needs to happen."  However, Mother made no further argument or factual assertion in this regard to the Family Court.

[7]  On May 28, 2020, the Interim Chief Judge of the Circuit Court of the Third Circuit withdrew prior orders allowing documents to be submitted by E-mail to the Family Court of the Third Circuit.

**Points of error (4) through (9):**  Mother's remaining points of error challenge certain findings made by the Family Court in the 1/8/21 Order Re: Second Permanency Hearing.  We have held above that: the Family Court erred in precluding Mother from examining or cross-examining those who prepared DHS's Permanent Plan filed on November 23, 2020, and any other DHS report admitted and relied upon, pursuant to HRS § 587A-18; and furthermore, the Family Court erred in precluding Mother from testifying and presenting other relevant evidence.  Given these rulings, we further conclude that the findings in the 1/8/21 Order Re: Second Permanency Hearing that Mother challenges in her points of error (4) through (9) must be vacated because she did not have a meaningful opportunity to present any evidence pertaining to the challenged findings.

Therefore, IT IS HEREBY ORDERED that, except for findings not challenged by Mother in this appeal, the Order Related to Continued Second Permanency Hearing, filed on January 8, 2021, in the Family Court of the Third Circuit, is vacated. The case is remanded to the Family Court for further proceedings consistent with this Summary Disposition Order.

DATED:  Honolulu, Hawai‘i, December 20, 2021.

On the briefs:

Michael S. Zola,
for Appellant Mother

Charles H. McCreary IV,
Patrick A. Pascual,
Julio C. Herrera,
Erin K.S. Torres,
Deputy Attorney General,
for Petitioner-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

14