**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000278**
**23-FEB-2024**
**08:00 AM**
**Dkt. 73 SO**

NO. CAAP-23-0000278

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF S.U.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 21-00093)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting C.J., and Hiraoka and Wadsworth, JJ.)

Appellant/Cross-Appellee Father (**Father**) appeals and Appellee/Cross-Appellant Mother (**Mother**) (together, **Parents**) cross-appeals from the Order Terminating Parental Rights (**TPR Order**) and Letters of Permanent Custody, entered on March 24, 2023, in the Family Court of the First Circuit (**Family Court**). The TPR Order terminated Father and Mother's respective parental rights to S.U. (**Child**).[1]

Father and Mother each contend that Petitioner-Appellee Department of Human Services (**DHS**) failed to establish by clear and convincing evidence that: (1) the respective Parent is not willing and able to provide the Child with a safe family home and will not be willing and able to do so in the reasonably foreseeable future, even with the assistance of a service plan; and (2) the permanent plan dated February 28, 2023 (**Permanent**

---

[1] The Honorable Jessi L.K. Hall presided.

**Plan**) is in the best interests of the Child. Father and Mother also challenge certain aspects of the Family Court's May 15, 2023 Findings of Fact and Conclusions of Law (**FOFs/COLs**). Specifically, Father contests FOFs 29-30, 34-35, 74-79, 83-85, 96-111, and 120-121, and COLs 16-17, and 21. Mother contests FOFs 29-30, 34-36, 74-76, 81-87, 89, 91, 96-97, 99-100, and 121, and COLs 16-19, and 21.

For the reasons discussed below, we affirm.

## I. Background

The following background is drawn primarily from the Family Court's uncontested FOFs, which are binding on appeal. See In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002).

The Child was born in May 2021 testing positive for amphetamines. Police took the Child into protective custody on May 24, 2021, and transferred custody to DHS, which placed the Child in a DHS general licensed resource home upon discharge from the hospital on May 26, 2021.

The FOFs further state:

> 17. On May 27, 2021, the DHS filed a Petition for Temporary Foster Custody ("Petition") based on (1) Mother's impairment due to substance abuse was negatively affecting her ability to protect, supervise and care for the Child; (2) Mother received minimal prenatal care; (3) Mother tested positive for opiates, methadone and amphetamines, then left [the hospital] against medical advice even though her baby was breached; (4) the Child tested positive for amphetamines at birth; (5) Mother admitted to using heroin daily and methamphetamine, including use during her pregnancy with the Child; (6) Father's history of substance abuse and refusal to do a urinalysis test claiming it was against his religion,[2] and then saying that he was uncomfortable taking the test; and (7) Father's history of domestic violence with his wife who had a court-ordered restraining order against Father for two years.
>
> 18. On June 1, 2021, the initial Temporary Foster Custody hearing on the Petition was held, and Parents were present with their court-appointed counsels. . . . Mother

---

[2] Uncontested FOF 14 states:

> Father refused to submit to a urinalysis claiming that it was against his religion as he was a Muslim. On May 23, 2021, DHS contacted the Muslim Association of Hawaii and was informed that although it was against Islam to use, buy or sell drugs, alcohol or intoxicants; it is not against Islam to take a drug test or any medical test.

knowingly and voluntarily stipulated to the adjudication of the Petition, the Court's [Hawaii Revised Statutes (**HRS**)] Chapter 587A subject matter jurisdiction, foster custody and the family service plan dated May 27, 2021. . . . The Court adjudicated the Petition, invoked the Court's subject matter jurisdiction over the Child and Mother, awarded foster custody of the Child to the DHS, and ordered the Family Service Plan dated May 27, 2021, as modified, as to Mother.

19.    At the June 29, 2021 return hearing, Parents were present with their court-appointed counsels.  Father knowingly and voluntarily stipulated to the adjudication of the Petition, the Court's HRS Chapter 587A subject matter jurisdiction, foster custody and the family service plan dated May 27, 2021 . . . . The Court adjudicated the Petition, invoked the Court's subject matter jurisdiction over Father, and ordered the Family Service Plan dated May 27, 2021, as to Father.

. . . .

23.    On January 3, 2022, the DHS filed its Motion to Terminate Parental Rights ("MTPR").

24.    At the March 10, 2022 periodic review hearing, . . . [t]he Court scheduled a mediation and trial on the MTPR [(**TPR Trial**)].

25.    At the June 22, 2022 mediation, Parents were present with their counsels, and the parties reached an agreement to work to reunify the Child with Father . . . . The Court set aside the TPR Trial and ordered Father to submit to random urinalysis tests and a hair follicle test within one week.

26.    At the September 22, 2022 periodic review and permanency hearing, Parents were present with their counsels . . . . Mother's recent urinalysis tests were positive.  Father had been sporadic in his services and had not done the hair follicle test stating that he did not have enough hair.  Father had not been participating in the random urinalysis test as he felt uncomfortable doing it at Hina Mauka.  Over Father's objection, the Court ordered Father to continue doing random urinalysis tests.  DHS was ordered to address Father's concerns with Hina Mauka.  Due to failing to complete a hair follicle test, Father was again ordered to submit to a hair follicle test prior to the next hearing on November 18, 2022.

27.    At the periodic review and permanency hearing on November 18, 2022, Parents were present with their counsels . . . . The Court found that Parents had not made progress toward resolving the problems that necessitated placement.  Father had allegedly taken a hair follicle test, but refused to sign the necessary release for the information to be provided to DHS.  Father's failure to comply with the court ordered hair follicle test led to a finding that the hair follicle test was a presumptive positive that could be rebutted with the receipt of the test results.  A TPR Trial was set and the Court ordered Parents to appear for the TPR Trial on March 20[-]23, 2023 . . . , and for a pretrial conference on March 9, 2023 . . . .

28.    On December 14, 2022, the Court filed an Order Re-Setting Trial.  The TPR Trial scheduled for March 20,

> 2023 was set aside and the TPR trial was set on
> March 22[-]24, 2023 . . . .

(Footnote added.)

At the March 9, 2023 pretrial conference, Parents were present and represented by counsel. DHS informed the Court and the parties that because DHS social worker Tracy Zhang (**Zhang**) would be leaving DHS, DHS Section Administrator Puafisi Tupola (**Tupola**), rather than Zhang, would be testifying on behalf of DHS at the TPR Trial. Neither Father nor Mother's counsel objected to Tupola testifying. DHS then asked the court to admit into evidence State's Exhibits 97-134. Father and Mother (through counsel) both indicated they had no objections, subject to cross-examination, and the Family Court received the exhibits into evidence. The court also denied Father's request to continue the TPR Trial so that Father could re-do the hair follicle test, but allowed Father to identify the person who performed Father's earlier hair follicle test as a trial witness by March 15, 2023.

At the March 22, 2023 TPR Trial, Father and Mother were defaulted for their failure to appear, but their respective attorneys were present. Parents' attorneys' objected to Tupola testifying on behalf of DHS. The court reminded counsel that they had not objected at the pretrial conference when DHS stated that Tupola would be testifying on behalf of DHS, and allowed Tupola to testify over objection.

The Court proceeded with the TPR trial, hearing testimony from Tupola and the guardian ad litem. Parents' respective attorneys were provided the opportunity to and conducted cross examination of the witnesses.

The Court orally announced its decision on March 22, 2023. The Court found by clear and convincing evidence that:

> (1) Mother and Father are not presently willing and able to provide the Child with a safe family home, even with the assistance of a service plan; (2) it is not reasonably foreseeable that Mother and Father will become willing and able to provide the Child with a safe family home, even with the assistance of a service plan, within a reasonable period of time; and (3) the proposed Permanent Plan . . . with the goal of adoption, is in the best interest of the Child. The Court terminated the parental rights of Mother and Father; awarded permanent custody of the Child to DHS; and ordered the Permanent Plan . . . .

The court subsequently entered the TPR Order and Letters of Permanent Custody. This appeal and cross-appeal followed.

## II. Discussion

Father and Mother each contend that DHS failed to establish by clear and convincing evidence, pursuant to HRS § 587A-33(a) (2018),[3] that: (1) the respective Parent is not willing and able to provide the Child with a safe family home and will not be willing and able to do so in the reasonably foreseeable future, even with the assistance of a service plan; and (2) the Permanent Plan is in the best interests of the Child. More specifically, Father and Mother both contend that the Family Court abused its discretion in allowing Tupola rather than Zhang to testify during the TPR trial, where Zhang prepared DHS reports about which Tupola testified. Father also separately argues that at the March 9, 2023 pretrial conference, the Family Court abused its discretion by denying his request for a continuance of trial.

As to Tupola's testimony, Father and Mother both rely in part on HRS § 587A-18(d). The statute provides, in relevant part:

> (c) The department [of human services] or other authorized agencies shall submit to the [family] court each

---

[3] HRS § 587A-33(a) provides, in relevant part:

> (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> (1) A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;
>
> (2) It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care;
>
> (3) The proposed permanent plan is in the best interests of the child.

report, in its entirety, pertaining to the child or the child's family that has been prepared by a child protective services multidisciplinary team or consultant.

(d) A written report submitted pursuant to this section shall be admissible and relied upon to the extent of its probative value in any proceeding under this chapter, subject to the right of any party to examine or cross-examine the preparer of the report.

HRS § 587A-18 (2018). The statute gave Father and Mother the right to examine or cross-examine Zhang, but it did not require that DHS call Zhang as a witness in lieu of Tupola. See In re EAC, No. CAAP-22-0000381, 2023 WL 1462794, *3 (Haw. App. Feb. 2, 2023) (SDO); see also In re TC, No. CAAP-21-0000053, 2021 WL 6054831, at *4 (Haw. App. Dec. 20, 2021) (SDO) (noting that "admission of a report into evidence under HRS § 587A-18(d) is not contingent upon actual cross examination of the preparer of the report").

At the March 9, 2023 pretrial conference, "DHS informed the Court and all parties that DHS Section Administrator . . . Tupola[] would be testifying at the TPR Trial because the current DHS social worker . . . Zhang would be leaving the DHS prior to the TPR Trial. Neither attorney objected to . . . Tupola testifying on behalf of . . . Zhang." FOF 30.[4] Additionally, the record does not indicate that Mother or Father subpoenaed Zhang or otherwise moved to compel her attendance to testify at the TPR Trial. See In re Doe, 77 Hawaiʻi 109, 116, 883 P.2d 30, 37 (1994) ("[H]aving failed to file a motion to compel [DHS social worker]'s testimony at trial, despite prior notice to Mother by DHS that [DHS social worker] would not be called as a witness, Mother effectively waived her right to cross examine [DHS social worker]."). In these circumstances, the Family Court did not abuse its discretion by not requiring testimony from a witness who was not called, subpoenaed, or otherwise required to

_____

[4] Both Mother and Father summarily challenge FOF 30, but neither party disputes the quoted language; in any event, we conclude based on the record that FOF 30 (in its entirety) is not clearly erroneous. In light of DHS's explicit disclosure at the pretrial conference, we also reject Mother's assertion that DHS's failure to include Tupola on its exhibit list violated "Mother's right to notice and a fair trial."

appear at the TPR trial.[5] See EAC, 2023 WL 1462794, at *3.

Father and Mother also appear to argue that Tupola's testimony at the TPR trial was based on inadmissible hearsay, inasmuch as Tupola relied on prior discussions with Zhang, as well as DHS reports authored by Zhang. Tupola testified that she worked for DHS as a section administrator and social worker. The Family Court granted DHS's request to qualify Tupola as an expert witness in the areas of child protective and welfare services under HRS § 587A-19.[6] Tupola also testified that she had personal knowledge of the case, she conferred with Zhang during the life of the case and prior to Zhang's departure from the department, she was familiar with the Child and his resource caregivers, and she reviewed the DHS reports prepared in the case prior to the TPR trial. As an expert, Tupola was entitled to testify about her opinions on matters related to child protective or welfare services, and she was entitled to rely on hearsay regarding these matters as long as it was the type of information reasonably relied upon by experts in her field. See Hawaii Rules of Evidence Rules 702 and 703. Indeed, Tupola testified that her testimony was based on the kind of information reasonably relied upon by experts in the field of social work and child welfare. On this record, we cannot say that the Family Court erred in allowing Tupola to testify.[7]

---

[5] For similar reasons, we conclude that Father's assertion — that "DHS's failure to call Ms. Zhang as a witness . . . violates Father's due process rights" — is without merit.

[6] HRS § 587A-19 (2018) provides:

> A person employed by the department [of human services] as a social worker in the area of child protective services or child welfare services shall be presumed to be qualified to testify as an expert on child protective or child welfare services. Any party may move the court to qualify a person employed by the department as a social worker in the area of child protective services or child welfare services called to testify as an expert on child protective or child welfare services.

[7] For similar reasons, we reject Father's related arguments that "the DHS reports" themselves were inadmissible hearsay and that Tupola's testimony was not credible because it relied on hearsay. Written reports submitted pursuant to HRS § 587A-18 were admissible under that statute. As to credibility, Tupola testified that her testimony was based on the kind of
(continued...)

We also reject Father's contention that the Family Court abused its discretion by denying Father's request for a continuance of trial. In FOFs 25-28, which Father does not contest and which are therefore binding on appeal, the Family Court found that: (1) at the June 22, 2022 mediation, the court ordered Father to submit to a hair follicle test within one week; (2) at the September 22, 2022 periodic review and permanency hearing, Father had not done the hair follicle test and was again ordered to submit to a hair follicle test prior to the next hearing on November 18, 2022; (3) at the periodic review and permanency hearing on November 18, 2022, Father had allegedly taken a hair follicle test, but refused to sign the necessary release for the information to be provided to DHS, leading to the court's finding that the hair follicle test was a presumptive positive that could be rebutted with the receipt of the test results; and (4) the court set the TPR trial for March 22-24, 2023. At the March 9, 2023 pretrial conference, Father requested a continuance of the trial based on the need to re-do the hair follicle test, as he had not signed the release for the prior test results, and Father would need more time to do a hair follicle test because his identification had expired. The Family Court gave Father multiple opportunities to submit to a hair follicle test and disclose the results to DHS prior to the March 2023 trial, but he failed to do so. In these circumstances, the trial court did not abuse its discretion by denying Father's request for a continuance of trial.

Father and Mother make no other argument as to why the FOFs and COLs they challenge are clearly erroneous. In any event, based on our review of the record, we conclude that FOFs 29-30, 34-36, 74-79, 81-87, 89, 91, 96-111, and 120-121, as well as COLs 16-19, and 21, which present mixed issues of fact and law, are supported by substantial evidence and are not clearly erroneous.

---

[7] (...continued) information reasonably relied upon by experts in her field, and it was within the province of the Family Court to determine Tupola's credibility.

For the reasons discussed above, we affirm the Order Terminating Parental Rights and Letters of Permanent Custody, entered on March 24, 2023, in the Family Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, February 23, 2024.


On the briefs:

Rebecca S. Lester
for Father-Appellant/Cross-
Appellee

Crystal M. Asano
for Mother-Appellee/Cross-
Appellant

Simeona A. Mariano and
Julio Cesar Herrera
Deputy Attorneys General
for Petitioner-Appellee

/s/ Katherine G. Leonard
Acting Chief Judge


/s/ Keith K. Hiraoka
Associate Judge


/s/ Clyde J. Wadsworth
Associate Judge