Filed 3/5/26  In re M.K. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.K., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>J.M.,<br><br>        Defendant and Appellant. | F090769<br><br>(Super. Ct. No. 24JP-00090-B)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Susan M. O'Brien, under appointment by the Court of Appeal, and J.M., in pro per, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Detjen, Acting P. J., Meehan, J. and De Santos, J.

J.M. (father) is the biological father of now one-and-a-half-year-old M.K. (daughter). Father appeals from the juvenile court's order denying a Welfare and Institutions Code section 388[1] petition filed by maternal grandmother requesting that daughter be placed with another relative. After reviewing the juvenile court record, father's court-appointed counsel informed this court she could find no arguable issues to raise on father's behalf. This court granted father leave to personally file a letter brief setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844 (*Phoenix H.*).)

Father filed a letter brief asking us to review whether the juvenile court erred in denying him reunification services and whether he was afforded a meaningful opportunity to testify and participate in the proceedings. We conclude father failed to address the ruling made at the November 4, 2025, hearing or set forth good cause showing any arguable issue of reversible error arose at the hearing. (*Phoenix H., supra,* 47 Cal.4th at p. 844.) Consequently, we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Daughter came to the attention of Merced County Human Services Agency (agency) in August 2024, when the agency received a report that she and her mother, An.K., were transported to the hospital after daughter was born in the living room of maternal grandmother's home. Daughter's urine tested positive for amphetamines, and she was admitted to the neonatal intensive care unit (NICU) as a precaution due to signs of respiratory distress and fluctuating body temperature. Mother reported she and father lived with grandmother and mother's four-year-old daughter A.K. Maternal grandmother (grandmother) was appointed A.K.'s legal guardian in 2020.

Numerous people, including maternal relatives, told the investigating social worker that mother and father had mental health and substance abuse issues and regularly

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

engaged in domestic violence in grandmother's home. A.K. reported she was afraid around mother and that mother yelled at her, father, and grandmother, and mother hit and kicked father.

Grandmother was said to have mental health problems and to have abused prescription drugs, namely pain medication. While grandmother denied mother's mental health behaviors, that mother used drugs, and that father lived in grandmother's home, the social worker reviewed 13 police reports generated between 2021 and 2024 in which grandmother reported daughter's ongoing substance abuse, mental health problems, and violence in her home. The reports demonstrated grandmother was aware of mother's drug use and violent behaviors, and that grandmother allowed mother and father to live in the home despite knowing they engaged in domestic violence and used drugs together.

The agency did not know father's whereabouts and efforts to locate him before the detention hearing were unsuccessful. Daughter, who was detained by the Merced County Sheriff's Department, remained in the NICU.

Based on the foregoing, the agency filed a petition alleging daughter came within the provisions of section 300, subdivisions (b)(1) (failure to protect) and (g) (no provision for support).[2] Father did not appear at the detention hearing and attempts to reach him by phone were unsuccessful. The juvenile court found a prima facie case had been made and ordered daughter removed from parental custody. A jurisdiction and disposition hearing was set for September 12, 2024.

*The Jurisdiction Hearing*

In a report for the jurisdiction hearing, father, who was located after the detention hearing, was described as "unhoused," but he had a telephone number. A social worker interviewed him by phone on September 3, 2024, and reviewed the petition's allegations

---

[2] A.K. was also detained and a subject of the petition, but she is not the subject of this appeal as appellant is not her father.

3.

with him.  Father told the social worker he was daughter's father, but he was not present at birth.  Father admitted he smoked marijuana and drank alcohol on weekends, but he denied that he or mother used methamphetamine.  Father denied domestic violence or that mother physically assaulted him, and he denied that he or mother had mental health issues.

Father was asked twice to complete a random drug screen, but he did not comply.  Although the agency scheduled weekly one-hour visits for father, he missed the first visit because he was not notified of it, and he missed a visit the following week even though he had been notified of it and said he would attend.

Neither parent appeared at the jurisdiction hearing.  The juvenile court found the petition's section 300, subdivision (b)(1) allegations true and dismissed the section 300, subdivision (g) allegation based on the agency's representation that it had been in telephone contact with father.  The disposition hearing was set for October 10, 2024.

### The Disposition Hearing

Daughter and A.K. were placed together in a maternal relative's home on October 4, 2024.  In a report for the disposition hearing, the agency recommended that neither parent receive reunification services – mother because her whereabouts were unknown and father because, as an alleged father, he was not entitled to them.  Father's visits were removed from the calendar because he missed two consecutive visits, but they were placed back on the calendar effective September 24, 2024.  While father attended that visit, he missed subsequent visits as a no call/no show on October 1 and 8, 2024, and visits were removed from the calendar.

Father appeared at the October 10, 2024, disposition hearing and an attorney was appointed to represent him.  The hearing was continued to October 17, 2024, so the disposition report could be filed, and father and his attorney appeared at that hearing.  Father's attorney stated that father wished to elevate his status, and he wanted mother,

4.

who was not present at the hearing, to testify on that issue. The court ordered a DNA test for father at his attorney's request.

The disposition hearing was continued multiple times. At a hearing held on December 16. 2024, father's attorney stated that father had been determined to be daughter's biological father, and the attorney was waiting for the agency to elevate father to presumed father status.[3] County counsel responded that the agency did not intend to elevate father because he "has not really been showing up for the minor," as he was not attending visits or drug testing. Based on that representation, father's attorney asked for time to talk to father about the agency's position and whether to contest his status or file parentage paperwork. The juvenile court continued the disposition hearing to January 21, 2025, with a readiness conference set for January 16, 2025.[4]

At the January 16 readiness hearing, father's attorney again asked whether the agency would elevate father to presumed father status. County counsel responded that father had "not been showing up." He was incarcerated locally, and a request had been submitted for his presence at the disposition hearing. County counsel stated it was "almost impossible to assess him for elevation due to his not complying and not reaching out to the [a]gency." Father's attorney stated that as an alleged father, he did not have standing to contest disposition, but she needed to speak with him and she would file a "JV-504" on his behalf.

Father and his attorney were present at the January 21 disposition hearing. Father's attorney stated she discussed the case with father, and he decided not to exercise his right to a contested hearing on the agency's recommendation concerning his status and instead would submit. The juvenile court adopted the agency's recommendations

---

[3] The agency subsequently submitted a lab test that stated father could not be excluded as daughter's biological father and the probability of paternity was 99.99%. Father is not listed on daughter's birth certificate.

[4] Subsequent references to dates are to dates in the year 2025.

and declared daughter a dependent, bypassed father for reunification services, and ordered that mother not receive reunification services as her whereabouts were unknown, but services would be provided if mother's whereabouts became known within six months. The juvenile court denied grandmother's request to be appointed daughter's de facto parent. The court set a six-month review hearing for July 10.

**The Status Review Hearings**

In a report prepared for the six-month status review hearing, the agency recommended the setting of a section 366.26 hearing. Mother's whereabouts remained unknown; therefore, she had effectively been bypassed for services. According to an eligibility database for "CalSAWS," father was homeless and living in a tent. Father had visited daughter only once since her detention, on September 24, 2024.

Father appeared for the first two settings of the review hearing, but he did not appear at the continued July 31 or August 19 hearings. At the August 19 hearing, the court terminated mother's reunification services and selected December 4 for a section 366.26 hearing. Although the court stated it would "put it on the record that in order to preserve appellate rights, a notice of intent to file a writ petition must be filed within seven days of today's date," the record does not show that the court directed the clerk to mail copies of the advisement to the absent parents or contain proofs of service that advisements were mailed to them. The agency's report for the section 366.26 hearing, however, states: "Writ rights were mailed to the mother [name], father [name] on 08/19/25."

**The Section 387 Petition**

On September 12, daughter and A.K. were removed from the maternal relative's home after the agency received a report the relative's 10-year-old son sexually assaulted a minor neighbor. The son denied the allegations and A.K. denied witnessing inappropriate touching. In addition, the maternal relative was alleged to have engaged in domestic violence with her partner which the children witnessed. After social workers

advised the maternal relative that the children would be removed from her home, grandmother arrived at the back door and began recording on her cell phone. The social workers believed grandmother's arrival and entry into the home indicated she often came to the house without agency approval.

The agency filed a section 387 petition seeking a more restrictive placement for the girls on September 17. Father was present at the detention hearing held the following day. Although his attorney recognized father did not have standing to object to placement, she joined in a request for continuance and asked that father be present so he could have input into the change of circumstances. County counsel did not object to father's presence at the hearing.

Father was present at the September 23 hearing on the section 387 petition. Father did not agree with daughter being removed from the maternal relative. After receiving testimony from the maternal relative and argument by counsel, the juvenile court found the maternal relative's testimony "totally unbelievable" and that the children were in a dangerous situation where grandmother had "unfettered access to them." While the court was announcing its findings, a person announced grandmother was recording the proceedings on her phone. The court admonished grandmother and adjourned the hearing.

### The JV-180 Petition

On October 31, grandmother filed a petition requesting that daughter be placed with her step-aunt V.B. pursuant to the section 361.3 relative placement preference. Grandmother asserted the step-aunt had requested placement, grandmother wanted daughter placed with her, daughter was bonded with the step-aunt, and it was in daughter's best interest to be placed with family.

The reporter's transcript of a November 4 hearing in A.K.'s case shows the juvenile court noted at the outset of the hearing that a document was filed the day before requesting the court to order the agency "to do certain things," which the court denied.

7.

The court stated that daughter had nothing to do with A.K.'s case and maternal grandmother did not have standing to raise issues regarding daughter. County counsel asked if the "two 388's" were denied, and the court responded, "It's denied." The court's minutes of that hearing reflect that the juvenile court considered the JV-180 request and ordered the request denied for the reasons stated on the record. The court denied maternal grandmother's counsel's oral request to argue the court's ruling as untimely. The court confirmed the previous orders denying the JV-180 and stated maternal grandmother previously had been advised that she was not a party to daughter's matter. Father was not present at this hearing.

On November 7, father filed a notice of intent to file a writ petition which stated he was challenging a November 4 juvenile court order setting a hearing pursuant to section 366.26. On December 3, this court issued an order which explained the notice of intent was untimely to initiate writ proceedings because the dependency court previously set a section 366.26 hearing as to daughter on August 19, 2025. On our own motion, we deemed the notice of intent to be a notice of appeal.

## DISCUSSION

This court presumes a trial court judgment or order is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Father's burden as the appellant is to raise claims of reversible error or other defect and present argument and authority on each point made. If an appellant fails to do so, we may dismiss the appeal. (*In re Sade C.* (1996) 13 Cal.4th 952, 994 (*Sade C.*).)

Father does not raise any issues concerning the order made at the hearing from which he appealed, namely the November 4 hearing where the juvenile court denied grandmother's request to have another relative assessed for placement of daughter. As such, he has not presented any cognizable appellate issue. Instead, father raises arguments concerning prior hearings in his letter brief. Specifically, father asks us to review whether: (1) the juvenile court erred in not ordering reunification services for him

8.

because he was elevated to presumed father status prior to disposition; and (2) he was afforded meaningful opportunity to testify and participate in the proceedings prior to rulings affecting his parental rights.

As for the denial of reunification services, that order, which father failed to appeal from, was made at the January dispositional hearing. The order entered at the dispositional hearing is the "final judgment" and is immediately appealable, along with the jurisdictional order. (§ 395, subd. (a)(1); *In re Sheila B.* (1993) 19 Cal.App.4th 187, 196.) Subsequent orders are appealable as orders after judgment (§ 395, subd. (a)(1)), except for the order terminating reunification services and setting a section 366.26 hearing which must be reviewed by writ. (§ 366.26, subd. (*l*)(1); *In re Merrick V.* (2004) 122 Cal.App.4th 235, 247.)

"An appeal from the most recent order entered in a dependency matter may not challenge prior orders, for which the statutory time for filing an appeal has passed." (*In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 563, abrogated in part on other grounds in *In re Tabitha W.* (2006) 143 Cal.App.4th 811, 817.) "If an order is appealable . . . and no timely appeal is taken therefrom, the issues determined by the order are res judicata." (*In re Matthew C.* (1993) 6 Cal.4th 386, 393.) Because the disposition order denying father reunification services was an appealable order and father failed to appeal the order, which is now final, he cannot challenge the denial of his services in this appeal.

Moreover, contrary to father's assertion, he was never elevated to presumed father status. Rather, father elected to remain an alleged father when he decided not to challenge the agency's decision not to deem him a presumed father. The juvenile court does not have a sua sponte duty to establish a factual basis for supporting a finding of presumed father status and then make such a finding. (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1410.) Rather, the proponent of the presumption has the burden of establishing the foundational facts by a preponderance of the evidence and asking the court to make such a determination. (*Ibid.*) Here, the record shows that father affirmatively chose to forego

9.

a challenge to his status as an alleged father and did not argue he should receive services as a biological father because daughter would benefit if he received reunification services. Therefore, the juvenile court did not err in not offering him reunification services. (*In re B.C.* (2012) 205 Cal.App.4th 1306, 1311, fn. 3 [only a presumed father is entitled to receive reunification services under section 361.5; "a biological father may be offered reunification services if the juvenile court determines such service will benefit the child"].)

Father also asks us to determine whether he was afforded a meaningful opportunity to testify and participate in the proceedings. Father, however, fails to provide any specific facts or references to the record demonstrating that he was denied the opportunity to participate in the proceedings. Arguments in a brief that are not supported by specific facts or citations to the record cannot raise arguable issues on appeal. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408; *Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1301.) Without specific reference to the record in this case to support his assertions, this court cannot evaluate whether the facts are as father represents or whether they support his claims of error.

In a dependency case, unlike in a criminal case, we have no duty to conduct an independent review of the record. (*Phoenix H., supra*, 47 Cal.4th at pp. 844–846.) Nonetheless, in an abundance of caution, we independently reviewed the record to confirm there is no good cause that an arguable issue exists. On the record before us, we find nothing to indicate an arguable issue exists.

## DISPOSITION

Because no claim of error or other defect has been raised in this matter, the appeal is dismissed. (*Phoenix H., supra*, 47 Cal.4th 835; *Sade C., supra*, 13 Cal.4th 952.)

10.